Giancarlo **PARRETTI**, Petitioner–Appellant,

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 95–56586.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted En Banc
Dec. 18, 1997.

Decided May 1, 1998.

William J. Genego, Law Offices of William J. Genego, Santa Monica, CA, for petitioner–appellant.

Nora M. Manella, U.S. Atty., Los Angeles, CA, for respondent–appellee.

Before: HUG, Chief Judge, and SCHROEDER, PREGERSON, REINHARDT, BRUNETTI, THOMPSON, O'SCANNLAIN, T.G. NELSON, HAWKINS, TASHIMA, and THOMAS, Circuit Judges.

Opinion by Judge PREGERSON; Dissent by Judge REINHARDT.

PREGERSON, Circuit Judge:

I

We took this case en banc to consider whether the arrest of Giancarlo Parretti pursuant to an Extradition Treaty with France violated the Fourth Amendment and whether his detention without bail prior to France's decision to request his extradition violated the Due Process Clause of the Fifth Amendment, or, whether this appeal should be dismissed under the fugitive disentitlement doctrine because Parretti fled the United States while his appeal was pending before a panel of this court. Because Parretti is a fugitive from justice, we exercise our discretion under the disentitlement doctrine and dismiss his appeal. Therefore, we find it unnecessary to address his constitutional claims.

II

In 1990, Pathe Communications Corporation, headed by Giancarlo Parretti, an Italian resident and citizen, purchased MGM–United Artists for $1.3 billion. As a result of this merger a new entity, MGM–Pathe Communications Corporation, was formed. The acquisition of MGM–United Artists was highly leveraged, and the new entity almost immediately faced cash flow problems. Several lawsuits were filed relating to the underlying leveraged transaction and the resulting merger.

On October 9, 1995, Parretti entered the United States from Italy to answer charges of perjury in connection with one of these

suits filed in Delaware Superior Court, and to be deposed in connection with another suit filed in Los Angeles Superior Court. The next day, France forwarded a diplomatic note to the U.S. Department of State requesting Parretti's "provisional arrest" pursuant to Article IV of the Treaty of Extradition between the United States and France, Jan. 6, 1909, U.S.-Fr., 22 U.S.T. 407, as amended, Feb. 12, 1970, T.I.A.S. 7075, so that he might be held in custody until France decided whether to request his extradition.

While in Los Angeles attending his deposition, Parretti was arrested based on allegations made in a French arrest warrant charging Parretti with extraditable offenses arising from the MGM–Pathe Communications Corporation merger.[1] After his arrest, Parretti was held without bail while the French government decided whether to request extradition. Parretti filed an application to be released on bail pending France's extradition request. The district court denied Parretti's application for bail even though the court believed that Parretti was not a flight risk. Parretti subsequently filed a petition for a writ of habeas corpus, which the district court also denied.

Parretti then filed a motion under Ninth Circuit Rule 27–3 seeking emergency review. On November 21, 1995, we granted Parretti's motion for emergency review and ordered him released. Our ruling was based on two grounds. First, we found that Parretti's arrest violated the Fourth Amendment because the government failed to make the required evidentiary showing of probable cause to believe he had committed an extraditable offense. Second, we held that Parretti's detention without bail violated the Due Process Clause of the Fifth Amendment in light of the district court's finding that he was not a flight risk. We required Parretti to surrender any passports in his possession to the

district court and to obtain the district court's consent before leaving the County of Los Angeles.

In January 1997, thirteen months after Parretti was released, Parretti fled the United States. On May 6, 1997, our court filed an opinion that set forth in detail our reasons for granting Parretti's petition for habeas relief and petition for release pending France's decision to request his extradition. *See Parretti v. United States,* 122 F.3d 758 (9th Cir.1997).

### III

The Supreme Court has "consistently and unequivocally approve[d] dismissal as an appropriate sanction when a prisoner is a fugitive during the ongoing appellate process." *Ortega–Rodriguez v. United States,* 507 U.S. 234, 242, 113 S.Ct. 1199, 1204–05, 122 L.Ed.2d 581 (1993) (internal quotations omitted). The fugitive disentitlement doctrine empowers us to dismiss the appeal of a defendant who flees the jurisdiction of the United States after timely appealing. An appellate court's power to disentitle a fugitive from access to the appellate process is grounded in equity. *See United States v. Sharpe,* 470 U.S. 675, 681 n. 2, 105 S.Ct. 1568, 1572 n. 2, 84 L.Ed.2d 605 (1985); *see also United States v. Van Cauwenberghe,* 934 F.2d 1048, 1054 (9th Cir.1991) (noting that the equitable doctrine of fugitive disentitlement is one of long standing). Our court has exercised its discretion and dismissed the appeal of a criminal defendant who became a fugitive from justice while his appeal was pending. *See United States v. Freelove,* 816 F.2d 479, 480 (9th Cir.1987) (court ordered that the pending appeal of a fugitive be dismissed unless he surrendered to authorities within forty-two days of date of the order); *cf. Hussein v. INS,* 817 F.2d 63 (9th

---

**1.** Parretti was arrested pursuant to a warrant issued by a United States Magistrate Judge on the basis of allegations contained in a "Complaint for Provisional Arrest Warrant" sworn to on information and belief by an assistant United States Attorney ("AUSA") for the Central District of California, "acting on behalf of the Government of France." The AUSA alleged that Parretti had been charged in an international arrest warrant issued in France on May 3, 1995. The

French warrant charged that Parretti had committed various offenses arising from his alleged looting of the French company Europe Image Distribution, one of MGM–Pathe's subsidiaries; that each of the offenses charged in the French warrant was an extraditable offense under the treaty; and that France had requested Parretti's "provisional arrest" under Article IV of the treaty.

Cir.1986) (court refused to hear pending appeal when petitioner escaped from federal custody after filing of appeal).

■ Several rationales that underlie the fugitive disentitlement doctrine apply to this appeal. First, although Parretti's status as a fugitive does not "strip the case of its character as an adjudicable case or controversy," it does disentitle him from calling upon the resources of the court to resolve his claims. *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586 (1970) (per curiam). By fleeing the jurisdiction of the United States, Parretti forfeited his right to appellate review under the fugitive disentitlement doctrine. *See id.* at 366, 90 S.Ct. at 498–99.

Second, Parretti has fled the United States. He remains a fugitive beyond the reach of this court's jurisdiction. If we were to reach the merits of Parretti's constitutional claims and affirm the district court, such a decision could not secure Parretti's presence before the district court, nor could it assure that any "judgment ... issued would prove enforceable." *Ortega–Rodriguez,* 507 U.S. at 239–40, 113 S.Ct. at 1203–04 (noting that it is within a court's discretion to refuse to hear a criminal case when the defendant fugitive cannot be made to respond to any ruling) (citing *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876)); *cf. Katz v. United States,* 920 F.2d 610, 612 (9th Cir.1990) (holding that the disentitlement doctrine was inapplicable because the defendant who sought judicial relief was no longer a fugitive), *abrogated on other grounds by Lozada v. Deeds,* 964 F.2d 956 (9th Cir.1992).

Third, "dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice." *Ortega–Rodriguez,* 507 U.S. at 242, 113 S.Ct. at 1204–05 (citing *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175–76, 43 L.Ed.2d 377 (1975)).

Fourth, the adversary character of criminal litigation may be compromised when the defendant is a fugitive. *See Sharpe,* 470 U.S.

at 724, 105 S.Ct. at 1595–96 (Stevens, J., dissenting). A defendant's flight threatens the effective operation of the appellate process because the fugitive's counsel may have little or no incentive to represent his client should further proceedings be necessary.

### IV

In light of Parretti's decision to flee the United States while this appeal was pending, we withdraw the panel opinion, 122 F.3d 758, and we exercise our discretion under the fugitive disentitlement doctrine and dismiss his appeal.

APPEAL DISMISSED.

REINHARDT, Circuit Judge, dissenting:

In this case, the court faces two extremely important issues that warrant our most thorough consideration. The positions advanced by the government on both constitutional questions are remarkable and should be examined with the greatest of care. In doing so, we should bear in mind that what the government tells us it can do to a foreign citizen in this case, it can just as easily do to a United States citizen in the next.[1]

First, the government maintains that when a foreign country simply suggests that it is considering requesting extradition, the United States government can arrest the person without a showing of probable cause and keep him locked up for months without bail. This position is at odds with one of our most basic constitutional principles—that the government cannot seize a person off the streets (or from a lawyer's office) and deny him his liberty without first showing probable cause to believe he has engaged in criminal activity. The government's contention that probable cause in the context of a provisional arrest is merely probable cause to believe that a foreign country has issued an arrest warrant is plainly incorrect. Such a showing would never, in any other circumstances, suffice to support the arrest of a person in this country, and there is no reason why it should suffice in the case of provisional arrests.

---

1. For a discussion of treaties permitting the extradition of United States citizens, see *Parretti v.* *United States,* 122 F.3d 758, 785–86 (9th Cir. 1997) (Reinhardt, J., concurring).

As to the bail issue, the government relies on cryptic language in an ambiguous case written by the Supreme Court almost 100 years ago for its argument that an almost irrebuttable presumption against bail exists in extradition cases. *See Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903). By failing to address the government's argument, we leave this circuit's law on the bail issue exactly where it was before this case—in total disarray. *See, e.g., In re Kirby*, 106 F.3d 855 (9th Cir.1996) (finding special circumstances existed for the remarkable reason that the potential extraditees, IRA terrorists, "enjoy the sympathy and are objects of concern of many Americans").

The fallacy in the government's positions is amply demonstrated in the panel's majority opinions, which I adopt in full; they still accurately set forth the law. Notwithstanding the compelling nature of the constitutional issues, however, the majority has avoided deciding them by invoking the fugitive disentitlement doctrine under the most unusual of circumstances. Because the doctrine is inapplicable to the circumstances presented here, it is this court's duty to reach the merits of the case. Accordingly, I dissent.

I briefly review the procedural history of this case in order to demonstrate why applying the fugitive disentitlement doctrine in this case is unusual and serves no purpose. On October 18, 1995, Giancarlo Parretti was arrested by federal agents, pursuant to a warrant issued by a United States Magistrate Judge on the basis of allegations that an international warrant had been issued against him in France. On the basis of a letter from the government of France indicating that it would seek Parretti's extradition, the magistrate judge denied bail and ordered that he be detained pending the extradition hearing. Parretti filed a petition for habeas corpus in the district court, arguing that his prolonged detention was unconstitutional. On November 9, the district court denied the petition.

Soon thereafter, Parretti filed an emergency motion with this court. On November 21, after Parretti had been incarcerated for 33 days, a panel of this court heard oral argument and ordered his immediate release on two independent grounds. First, the panel found that Parretti's arrest violated the Fourth Amendment because it was effected without a showing of probable cause to believe that he had committed an extraditable offense. Second, the panel concluded that Parretti's continued detention violated his Fifth Amendment right to due process because the district court specifically found that he presented neither a risk of flight nor a danger to the community. In a published opinion issued subsequently, the panel elaborated fully on its reasons for granting Parretti's emergency motion.

After the panel issued its order, but prior to the time the panel issued its full opinion, the district court implemented the order and Parretti was released on bail. Eight days after his release, the government, at the behest of France, filed a formal request for Parretti's extradition, at which time the district court made the requisite probable cause finding. The government did not, however, seek to have Parretti taken into federal custody again. Instead, sometime afterwards, jurisdiction over Parretti was assumed by the state of Delaware. He was then tried and convicted on criminal charges in a Delaware state court. Pending sentencing on these offenses, Parretti fled the Delaware court's jurisdiction. Thereafter, the panel's full opinion was released, and the government sought and we granted, at its suggestion, rehearing en banc because of the government's objections to the content of the panel's decision on the constitutional questions. Parretti has, of course, obtained all the relief he ever desired from the court and seeks nothing further.

In light of these procedural and factual circumstances, it is clear that the fugitive disentitlement doctrine has no applicability. Indeed, neither party has urged the court to invoke the doctrine and both parties agree that the doctrine has no relevance to the case.[2] The purpose of the doctrine is to deny

---

2. Nor has either party argued mootness as a ground for dismissal, because as the majority's opinion concedes, that doctrine is inapplicable.

The circumstances in this case present a classic situation involving a constitutional question that is "capable of repetition, yet evading review."

to those who have fled the court's jurisdiction any benefits of the court system. Here, Parretti received all the relief he could possibly obtain prior to fleeing and he seeks no further benefit from the court. Our dismissal of the case will deny Parretti nothing—it is only the government that seeks relief now, and it seeks relief not from the order we issued, but from the precedential effect of our opinion on the serious constitutional questions that arise in many extradition cases. The fugitive disentitlement doctrine makes sense *only* when we deny the *fugitive* some form of relief from the court, not when we frustrate our own ability to resolve critical constitutional questions. In the words of the Supreme Court, as quoted by the majority, maj. op. at 510, the doctrine makes sense only as a "sanction" against the defendant.[3]

As the majority's opinion amply demonstrates, the fugitive disentitlement doctrine is properly invoked only in cases in which the defendant seeks to benefit from the use of our limited judicial resources. That is not the case here. I therefore dissent.

*Honig v. Doe*, 484 U.S. 305, 318–23, 108 S.Ct. 592, 601–04, 98 L.Ed.2d 686 (1988). Because of the time limitations inherent in the brief provisional arrest period, any case involving such an arrest will become moot before it can run the normal judicial course. In this case, for example, which was originally filed as an emergency motion, the panel did not issue its order until Parretti had already been in jail for 33 days; however, the initial detention period would have expired seven days later.

In addition, there is a reasonable likelihood that Parretti could be subject to the same violation in the future. Although he is currently a fugitive, there is reason to expect that he may one day return to the United States. Parretti is, after all, an international financier with significant business interests in this country. And, if he returns, he will undoubtedly face another round of arrests. So far as the record reveals, incidentally, the government of France has never

obtained jurisdiction over him. Accordingly, the case is not moot.

**3.** The majority also relies on Justice Stevens's dissenting opinion in *United States v. Sharpe*, 470 U.S. 675, 724, 105 S.Ct. 1568, 1595–96, 84 L.Ed.2d 605 (1985) (Stevens, J., dissenting), for the proposition that dismissal is appropriate in light of the risk that "the adversary character of criminal litigation may be compromised when the defendant is a fugitive." Maj. op. at 511. Fortunately, that potential was not realized in this case, nor was it realized in *Sharpe*, in which the eight other Justices remained unpersuaded by that argument. *See id.* at 681 n. 2, 105 S.Ct. at 1573 n. 2 (noting that the Court ordered briefing from amicus curiae in opposition to the government's position). Here, Parretti's counsel agreed to continue his representation in spite of his client's flight, and has served as the government's very able adversary throughout the litigation.