**Pasqual ANTONIO–MARTINEZ,**
**Petitioner,**

v.

**IMMIGRATION AND**
**NATURALIZATION SERVICE,**
**Respondent.**

**No. 90–70474.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 2002.

Filed Jan. 30, 2003.

Sheila A. Bedi of the Institute for Public Representation, Georgetown University Law Center, Washington, D.C., argued for petitioner. Douglas L. Parker and Jacqueline B. Shapiro joined her on the brief.

Julia K. Doig of the Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., argued for respondent. Robert D. McCallum, Jr., and David M. McConnell joined her on the brief.

Before KOZINSKI and KLEINFELD, Circuit Judges, and GEORGE,[*] District Judge.

### OPINION

KOZINSKI, Circuit Judge.

We consider whether the fugitive disentitlement doctrine applies to an alien who goes missing while his petition for review of a deportation order is pending.

### Background

Petitioner Pasqual Antonio–Martinez was a rope-maker in Guatemala in the 1970s. Unsatisfied with his paycheck, he took up more lucrative work as an enforcer for a group called the "Guerrilla Army of the Poor." His new job was to go door-to-door shaking down local villagers for food and money to support the guerrillas, like an out-of-control UNICEF collector. The guerrillas threatened to kill anyone who didn't donate, and Antonio–Martinez kept a list of those who did and those who didn't. The Guatemalan authorities, not amused by his guerrilla credentials and aggressive brand of solicitation, sent soldiers to rough him up. Antonio–Martinez

---

\* The Honorable Lloyd D. George, Senior United States District Judge for the District of Nevada, sitting by designation.

fled to Mexico and, in 1982, went on to the United States.

In 1985, the INS sought to deport him. At a hearing before an Immigration Judge, Antonio–Martinez conceded deportability but argued that he was entitled to asylum because he had been "persecuted" by the Guatemalan authorities. The Immigration Judge, taking a dim view of his extortion of civilians, refused to grant asylum and found him deportable as charged. Antonio–Martinez appealed to the Board of Immigration Appeals, where the case remained until 1990, when the Board finally affirmed the Immigration Judge's decision.

Antonio–Martinez petitioned for review to our court. While his petition was pending and before it was calendared, the INS settled a class action that alleged bias in its adjudication of Guatemalan asylum claims. *See Am. Baptist Churches (ABC) v. Thornburgh,* 760 F.Supp. 796 (N.D.Cal. 1991). The *ABC* settlement offered benefits to class members including the possibility of de novo asylum hearings. With the parties' consent, we dismissed Antonio–Martinez's petition without prejudice to reinstatement to allow him to pursue relief under *ABC.* We withheld our mandate so that he would not be deported in the meantime. *See* 8 U.S.C. § 1105a(a)(3) (repealed 1996).

The case thereafter entered a protracted phase of litigative limbo where the government and Antonio–Martinez repeatedly asked us to extend our stay of the mandate. Obliging, we granted further stays in 1994, 1995, 1998 and 1999. Apparently, no progress has been made on Antonio–Martinez's efforts to obtain an *ABC* asylum hearing.[1] In October 2000, Antonio–Martinez's then-counsel informed us that

he had lost contact with his client. The lawyer had sent several letters to his last known address and contacted numerous other people, but had been unable to locate him and "ha[d] no direct knowledge of [his] status." Further efforts to track down Antonio–Martinez by both counsel and the INS have been unavailing. He has now been out of touch for well over two years.

In light of Antonio–Martinez's absence, a motions panel refused to further extend the de facto stay of proceedings and *sua sponte* reinstated his petition for review of the BIA's 1990 decision. The government now asks us to dismiss the petition under the fugitive disentitlement doctrine. It argues that Antonio–Martinez, by perambulating to parts unknown, has forfeited his right to review.

**Analysis**

 The fugitive disentitlement doctrine allows us to dismiss a criminal defendant's appeal if he flees while the appeal is pending. *See Parretti v. United States,* 143 F.3d 508, 510 (9th Cir.1998) (en banc). "Escape from federal custody is inconsistent with the pursuit of judicial remedies and constitutes a voluntary waiver of any pending judicial review. The [defendant]'s act disentitles [him] from calling upon the resources" of the court. *Hussein v. INS,* 817 F.2d 63, 63 (9th Cir.1986) (internal quotation marks and alterations omitted). The doctrine is a "severe" sanction that we do not lightly impose. *Degen v. United States,* 517 U.S. 820, 828, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996). But when circumstances warrant, it serves several important interests. Some focus on the

---

1. There is some confusion over the status of the *ABC* hearing. Antonio–Martinez's lawyer claims she is still waiting for the government to schedule it, while the government claims Antonio–Martinez failed to avail himself of available remedies. We need not resolve the dispute, because our decision does not depend on who bears the blame for the extended stay. We address Antonio–Martinez's petition for review of the BIA's 1990 decision, not his entitlement to relief under *ABC.*

wrongfulness of the defendant's conduct: Disentitlement punishes those who evade the reach of the law and thus discourages recourse to flight. *Parretti*, 143 F.3d at 511. Others focus on the consequences of the defendant's absence: Flight frustrates the execution of judgment should the government prevail, *id.*; by invoking the doctrine, we "avoid making decisions that could not be enforced." *United States v. Gonzalez*, 300 F.3d 1048, 1051 (9th Cir. 2002).

■■■ The paradigmatic object of the doctrine is the convicted criminal who flees while his appeal is pending. *See, e.g., Parretti*, 143 F.3d at 509. But the doctrine applies in immigration cases as well. *See Zapon v. U.S. Dep't of Justice*, 53 F.3d 283, 285 (9th Cir.1995); *Bar–Levy v. U.S. Dep't of Justice*, 990 F.2d 33, 35 (2d Cir. 1993); *Arana v. INS*, 673 F.2d 75, 77 & n. 2 (3d Cir.1982). As we explained in *Zapon*:

> "Although an alien who fails to surrender to the INS despite a lawful order of deportation is not, strictly speaking, a fugitive in a criminal matter, we think that he is nonetheless a fugitive from justice. Like the fugitive in a criminal matter, the alien who is a fugitive from a deportation order should ordinarily be barred by his fugitive status ·from calling upon the resources of the court to determine his claims."

53 F.3d at 285 (quoting *Bar–Levy*, 990 F.2d at 35 (citations omitted)).

**2.** An alien arguably satisfies this requirement by providing the INS with a current address of counsel. *See Dobrota v. INS*, 311 F.3d 1206, 1213 (9th Cir.2002). But this assumes that counsel knows where to find the alien. *See id.* ("an attorney *through whom he may be contacted*" (emphasis added)).

**3.** This is not a case where a missing appellant is subsequently located. *Cf. Ortega–Rodriguez v. United States*, 507 U.S. 234, 249–51, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993); *Gonzalez*, 300 F.3d at 1051. Antonio–Martinez's whereabouts remain unknown.

■■■ We don't know for sure whether Antonio–Martinez intentionally fled the reach of the law; perhaps after fifteen years he simply lost interest in his case and wandered off. Even so, he is in default of his legal obligations. He is required by law to notify the INS of any change of address. 8 U.S.C. § 1305(a); 8 C.F.R. § 265.1.[2] He failed to do so, and his counsel and the INS are now unable to locate him because of his dereliction.[3]

·The Third Circuit's decision in *Arana* is on point. In that case, the INS had ordered the petitioner to report for deportation. It was unclear whether he ever received the order, because he had moved from his last known address without informing the INS. *Arana*, 673 F.2d at 76. The court held that he had "apparently" decided to conceal himself by failing to notify the INS of his new address, and dismissed his appeal. *Id.* at 77.

■■■ Under the law in effect at the time of Antonio–Martinez's hearing, an alien could reopen deportation proceedings held entirely in absentia even if the only reason he didn't know about the hearing was that he had moved without telling the INS. We required the INS to show that the alien had actual notice of his obligation to report changes of address. *See Lahmidi v. INS*, 149 F.3d 1011, 1017 (9th Cir.1998); *Urbina–Osejo v. INS*, 124 F.3d 1314, 1317–18 (9th Cir.1997).[4] But there is a significant

**4.** Former law required only "reasonable cause" to reopen, whereas current law requires "exceptional circumstances." *See Urbina–Osejo*, 124 F.3d at 1316 & n. 1; *cf.* 8 U.S.C. § 1229a(b)(5)(C)(i). Current law also requires orders to show cause to inform aliens of the change of address notification requirement. *See Urbina–Osejo*, 124 F.3d at 1317 n. 2; *cf.* 8 U.S.C. § 1229(a)(1)(F). The government does not argue, however, that Antonio–Martinez had actual notice of the requirement.

difference between initiating deportation proceedings in absentia and declining to hear an absent alien's petition for review of proceedings in which he fully participated. The distinction is much like that between criminal trial in absentia and fugitive disentitlement: We don't hold entire trials in a defendant's absence, but we do dismiss an appeal if he thereafter flees. *Compare Crosby v. United States,* 506 U.S. 255, 262, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), *with Parretti,* 143 F.3d at 511. Participation in an earlier phase of the proceedings sharpens a party's awareness of his common-sense responsibility to stay in touch as his case progresses, particularly after he suffers an adverse decision. *Cf. Lee v. INS,* 685 F.2d 343 (9th Cir.1982) (dismissing an untimely petition where counsel had failed to notify the BIA of his new address). As a general rule, ignorance of the law is no excuse, *see Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), and whatever the current status of the limited exception for in absentia deportation proceedings, it does not extend to those who fail to stay in touch *after* a deportation order is entered in their presence.

■ Antonio–Martinez's lawyer argues that her client is not a fugitive at all, because his deportation order has been automatically stayed while his petition hibernates on our docket. *See* 8 U.S.C. § 1105a(a)(3) (repealed 1996). She misconstrues the effect of the stay. That the order is stayed doesn't mean it doesn't exist. So long as a deportation order is outstanding, an alien has a heightened obligation to keep the INS apprised of his whereabouts so that it can take him into custody if and when the stay is lifted. An alien subject to a stayed deportation order is no different from a criminal defendant on bail pending appeal. *See, e.g., Parretti,* 143 F.3d at 509–10. In either case, the appellant is spared the hardships of deportation or confinement while his case is adjudicated, but he remains subject to the court's authority and must surrender any time the court deems it appropriate. *See* 8 U.S.C. § 1105a(a)(3) (repealed 1996).

Applying the fugitive disentitlement doctrine here furthers its punitive and deterrent purposes. Those who disregard their legal and common-sense obligation to stay in touch while their lawyers appeal an outstanding deportation order should be sanctioned. The prospect of disentitlement provides a strong incentive to maintain contact with the INS and counsel, rather than taking one's continued presence in the country for granted.

Applying the doctrine here also responds appropriately to the consequences of Antonio–Martinez's absence. His disappearance has the same effect as a criminal defendant's flight. By failing to report his change of address to either his lawyer or the INS for an extended period of time, he has effectively put himself beyond the jurisdiction of the court. Because no one has any clue where Antonio–Martinez is, his petition has the same "heads I win, tails you'll never find me" quality that justifies disentitlement in other contexts. Those who invoke our appellate jurisdiction must take the bitter with the sweet: They cannot ask us to overturn adverse judgments while insulating themselves from the consequences of an unfavorable result.

Antonio–Martinez has been gone for well over two years. By all appearances, he is not coming back. The chances that anything we do will have the slightest effect on him are remote in the extreme. His petition for review is accordingly

**DISMISSED.**