**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

|  |  |
|---|---|
| **KUI KHI SIE; PARLINDUNGAN SIMAMORA,** <br><br> Petitioners, <br><br> v. <br><br> **ERIC H. HOLDER, Jr., Attorney General,** <br><br> Respondent. | No. 10-70905 <br><br> Agency Nos. A096-274-233 <br>      A096-274-232 <br><br> **MEMORANDUM**[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 5, 2014
Pasadena, California

Before: **KOZINSKI**, Chief Judge, **TROTT** and **CALLAHAN**, Circuit
Judges.

**1.** Substantial evidence supports the BIA's finding that petitioners don't

qualify for an exception to the one-year filing deadline.  See 8 U.S.C.

§ 1158(a)(2)(B).  Petitioners argue that "extraordinary circumstances" excuse their

---

  [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

delay because they relied on a fraudulent immigration consulting organization, the Chinese Indonesian Association (CIAS), to file their asylum applications. 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(5). But, unlike Viridiana v. Holder, 646 F.3d 1230, 1238–39 (9th Cir. 2011), on which petitioners rely, they didn't pay the full fee CIAS requested, didn't demonstrate reasonable diligence and unilaterally stopped working with the organization.

Even if reliance on CIAS were an extraordinary circumstance, petitioners' asylum applications weren't filed "within a reasonable period." 8 C.F.R. § 1208.4(a)(5). Sie's application deadline passed almost nine months before she approached CIAS, and the fact that she didn't know about the possibility of asylum relief is hardly extraordinary. See Antonio-Martinez v. INS, 317 F.3d 1089, 1093 (9th Cir. 2003). Simamora did contact CIAS two months before his filing due date, but then he didn't actually file his application until almost four years after he parted ways with the organization. We lack jurisdiction to consider petitioners' argument that Simamora's application should be considered to have been filed at the same time as Sie's because Sie had listed Simamora as a derivative beneficiary. See Barron v. Ashcroft, 358 F.3d 674, 677 (9th Cir. 2004).

**2.** The BIA did not err in holding that petitioners didn't qualify for withholding of removal. That a group of Muslims prevented Simamora from holding a prayer meeting at his house does not rise to the level of persecution, as neither Simamora's property nor person were threatened or harmed. See Hoxha v. Ashcroft, 319 F.3d 1179, 1182 (9th Cir. 2003); Prasad v. INS, 47 F.3d 336, 339–40 (9th Cir. 1995). Nor was Sie subject to persecution. She testified that in the 1970s, unknown Indonesians burned down her school and family home. She believed an Indonesian was involved with the drowning of her younger brother in 1996, and that her older brother's death was caused either by his Indonesian boss or natural causes. Sie also testified that her nephew was robbed by a group of Indonesians in 2003, almost two years after she left the country. Sie provides no proof that any of these misfortunes resulted from her protected status.

Substantial evidence also supports the BIA's finding that petitioners failed to establish a "clear probability" of future persecution. See Tampubolon v. Holder, 610 F.3d 1056, 1062 (9th Cir. 2010). Although petitioners arguably face a general risk of persecution in Indonesia because they are Catholic and Sie is Chinese, they were never specifically targeted or physically injured, and their two adult sons are still living in the country, apparently unharmed. See Hakeem v. INS, 273 F.3d

812, 816–17 (9th Cir. 2001), <u>superseded in part by statute</u>, REAL ID Act of 2005, Pub. L. No. 109–13, § 106, 119 Stat. 231.

**3.** The BIA's determination that petitioners are ineligible for protection under the Convention Against Torture is supported by substantial evidence. Petitioners argue that Indonesia's corrupt law enforcement system and intolerant religious environment are conditions warranting CAT relief. But petitioners haven't presented any evidence of a "particularized threat of torture." <u>See</u> <u>Dhital</u> v. <u>Mukasey</u>, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam) (emphasis omitted).

**PETITION DENIED.**