**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| NEMESIO ALEJANDRO RODRIGUEZ-PATLAN, AKA Nemesio A. Rodriguezpatlan,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General,<br><br>Respondent. | No. 17-71616<br><br>Agency No. A205-719-889<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 17, 2023
Submission Vacated April 30, 2024
Resubmitted December 10, 2024
Pasadena, California

Before:     TASHIMA, COLLINS, and SANCHEZ, Circuit Judges.
Partial Concurrence by Judge COLLINS.

Petitioner Nemesio Alejandro Rodriguez-Patlan, a native and citizen of

Mexico, petitions for review of a decision of the Board of Immigration Appeals

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

(BIA) affirming the Immigration Judge's denial of Petitioner's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we deny the petition.

1.      The BIA properly found that Petitioner's untimely filing of his asylum application was not excused by extraordinary circumstances. Even if Petitioner was seventeen years old when he entered the United States in 1998, he did not apply for asylum until 2014, and his assertion that he did not know about asylum does not constitute "extraordinary circumstances" to excuse the delay. 8 U.S.C. § 1158(a)(2)(D); *see Alquijay v. Garland*, 40 F.4th 1099, 1103 (9th Cir. 2022) (rejecting the petitioner's argument that his "ignorance of the legal requirements for filing an asylum application" was an extraordinary circumstance excusing his failure to file for asylum within the one-year deadline, stating that "ignorance of the law is no excuse" (quoting *Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003))).

2.      We vacated submission and ordered supplemental briefing on the effect, if any, of *Wilkinson v. Garland*, 601 U.S. 209 (2024), on this case. We conclude that *Wilkinson* did not definitively settle the standard of review question, but that the standard of review does not affect the outcome of Petitioner's

withholding claim. *See Singh v. Garland*, 57 F.4th 643, 651–52 (9th Cir. 2023) (explaining that we have held that both de novo review and the substantial evidence standard apply to a determination that particular acts constitute past persecution for asylum purposes, but that we need not decide which standard applies where the harm rose to the level of persecution under either standard).

In *Wilkinson*, the Court "analyzed whether there was jurisdiction to review a decision that a petitioner had not met the 'exceptional and extremely unusual hardship' requirement necessary to be eligible for cancellation of removal." *Zia v. Garland*, 112 F.4th 1194, 1201 (9th Cir. 2024) (quoting *Wilkinson*, 601 U.S. at 212). The question was whether the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(i), "(which strips jurisdiction over judgments regarding discretionary relief)," precluded review of the IJ's hardship determination, or if the determination was reviewable under "§ 1252(a)(2)(D) (which restores [jurisdiction] for legal questions)." *Wilkinson*, 601 U.S. at 218. The Court held that "the application of the exceptional and extremely unusual hardship standard to a given set of facts is reviewable as a question of law under § 1252(a)(2)(D)," explaining that "[m]ixed questions of law and fact, even when they are primarily factual, fall within the statutory definition of 'questions of law' in § 1252(a)(2)(D)." *Id.* at 217, 225. In reaching its conclusion, the Court reasoned

3

that, although mixed questions can be primarily legal or primarily factual, "[t]hat a mixed question requires a court to immerse itself in facts does not transform the question into one of fact. It simply suggests a more deferential standard of review." *Id.* at 222.

*Wilkinson* was concerned with the distinct issue of federal court jurisdiction over "judgment[s] regarding the granting of [discretionary] relief" such as cancellation of removal, *id.* at 218, and did not address the separate question presented here: what standard of review should govern nondiscretionary claims for asylum and withholding of removal which are reviewable under 8 U.S.C. § 1252(d)(1).[1] *See Santos-Zacaria v. Garland*, 598 U.S. 411, 419 & n.5 (2023) (contrasting the jurisdiction-stripping language attendant to discretionary forms of

---

[1] It is true that asylum claims also involve an exercise of the agency's discretion whether to grant relief after statutory eligibility has been found, *see Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004), but as our concurring colleague acknowledges, discretionary asylum decisions are reviewable by this court, including factual matters underlying the exercise of discretion. *Id.* at 1137–38; *see* 8 U.S.C. § 1252(b)(4)(D). For the cancellation of removal claim at issue in *Wilkinson*, however, courts lack jurisdiction to review "factual question[s] raised in an application for discretionary relief." *Wilkinson*, 601 U.S. at 222; *see Patel v. Garland*, 596 U.S. 328, 347 (2022). *Wilkinson* had no occasion to address the appropriate standard of review for past persecution claims involving undisputed facts in which the jurisdiction-stripping provision of § 1252(a)(2)(B)(i) has no application. In any event, because we have disposed of Petitioner's asylum claim, the only relevant form of relief is withholding of removal, which is entirely nondiscretionary. *See Bromfield v. Mukasey*, 543 F.3d 1071, 1075 (9th Cir. 2008).

relief with review of final orders of removal under § 1252(d)). *Wilkinson*'s statement that a mixed question requiring an "immers[ion]" in facts "suggests a more deferential standard of review," *Wilkinson*, 601 U.S. at 222, does not address whether a past persecution claim such as Petitioner's, which involves the application of a legal standard to an undisputed set of facts, should be reviewed de novo or for substantial evidence. The Court's passing "suggest[ion]" that a more deferential standard may be warranted for fact-intensive discretionary inquiries does not shed much light on the issues raised here.

We conclude that Petitioner failed to establish past persecution under either de novo or substantial evidence review. *See Sharma v. Garland*, 9 F.4th 1052, 1061 (9th Cir. 2021) ("We have repeatedly denied petitions for review when, among other factors, the record did not demonstrate significant physical harm."); *Mansour v. Ashcroft*, 390 F.3d 667, 673 (9th Cir. 2004) (finding that the record did not compel a finding of past persecution where the petitioners had experienced religious discrimination as children, including being struck and whipped by their teachers because of their faith); *Nagoulko v. INS*, 333 F.3d 1012, 1016–18 (9th Cir. 2003) (concluding that although petitioner was "teased, bothered, discriminated against and harassed because of her . . . religious beliefs," including being fired from her job because of her religion, being "pushed" while attending church

5

services, and witnessing others being beaten, the record did not compel a finding of persecution).

In light of the evidence that Petitioner's family members continue to practice their religion in Mexico, apparently without additional harm, Petitioner also has failed to establish a clear probability of future persecution. *See Tamang v. Holder*, 598 F.3d 1083, 1094 (9th Cir. 2010) (stating that "a petitioner's fear of future persecution 'is weakened, even undercut, when similarly-situated family members' living in the petitioner's home country are not harmed" (quoting *Sinha v. Holder*, 564 F.3d 1015, 1022 (9th Cir. 2009))).

3.      The BIA's finding that Petitioner failed to establish eligibility for CAT protection is supported by substantial evidence. The record contains no suggestion that Petitioner or his family have been subjected to torture; nor does Petitioner cite to any evidence indicating that he "will more likely than not be tortured with the consent or acquiescence of a public official if removed to [his] native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020).

The petition for review is **DENIED**.



*Rodriguez-Patlan v. Bondi*, No. 17-71616

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in sections 1 and 3 of the memorandum disposition, which uphold the agency's denial of asylum relief (on timeliness grounds) and the agency's denial of relief under the Convention Against Torture. But as to section 2, which addresses the denial of withholding of removal, I concur only in the judgment.

In addressing Rodriguez-Patlan's claim that he suffered past persecution in Mexico because of his religion, *see* 8 U.S.C. § 1231(b)(3)(A), the Board of Immigration Appeals ("BIA") held that the past harms Rodriguez-Patlan suffered did "not rise to the level of persecution." But as the BIA acknowledged, this past mistreatment included multiple beatings by gang members. As to the harms occasioned by these beatings, the record evidence is that, on three or four occasions, the beatings were severe enough to result in black eyes, and that, as Rodriguez-Patlan approached age 18, the beatings "happen[ed] more frequently" and "the injuries were getting worse." The majority concludes that, *even under de novo review*, and even considered against the backdrop of all of the other evidence of discrimination against Jehovah's Witnesses that he endured, Rodriguez-Patlan's multiple beatings resulting in increasingly worse black eyes do not constitute sufficiently "significant physical harm" to rise to the level of persecution. *See* Memo. Dispo. at 5–6. I respectfully disagree.

The cases cited by the majority do not support its conclusion on this score, because they all involved minor (if any) physical harm, and because most of them applied deferential review. *See Sharma v. Garland*, 9 F.4th 1052, 1060, 1063–64 (9th Cir. 2021) (holding, under deferential review, that a single incident of arrest and detention, including baton strikes and other mistreatment, did not rise to the level of persecution where there was "no indication of injuries, serious or otherwise"); *Mansour v. Ashcroft*, 390 F.3d 667, 670, 673 (9th Cir. 2004) (holding, under deferential review, that "private discrimination" on the basis of religion, including differential corporal punishment by schoolteachers, that is "neither condoned by the state nor the prevailing social norm," "does not constitute persecution"); *Nagoulko v. INS*, 333 F.3d 1012, 1016–18 (9th Cir. 2003) (upholding determination that the discriminatory treatment of the petitioner did not rise to the level of persecution, stating that "it is significant that [the petitioner] never suffered any significant physical violence" and "was never physically harmed"). In contrast, if we were to apply de novo review in assessing whether the more serious physical injuries and abuse alleged here rise to the level of persecution, I would hold that they do. *See Hoque v. Ashcroft*, 367 F.3d 1190, 1193, 1198 (9th Cir. 2004) (holding that petitioner who was abducted, beaten with sticks, and stabbed established past persecution); *see also Kaur v. Wilkinson*, 986 F.3d 1216, 1222 (9th Cir. 2021) (noting that we have generally "concluded that

2

physical violence is persecution" (citations and internal quotation marks omitted)); *Li v. Holder*, 559 F.3d 1096, 1107 (9th Cir. 2009) (noting that it is "well established that physical violence is persecution"); *Chand v. INS*, 222 F.3d 1066, 1073 (9th Cir. 2000) ("Physical harm has consistently been treated as persecution.").

But the Government contends that the standard of review is *not* de novo, and that the issue should instead be reviewed under a deferential standard. I have previously noted an intra-circuit split on this point, *see Fon v. Garland*, 34 F.4th 810, 820 (9th Cir. 2022) (Collins, J., concurring), and the Government argues here that the Supreme Court's recent decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), resolves that split in favor of deferential review. If I thought that Rodriguez-Patlan would *also* prevail on the rise-to-the-level-of-persecution issue under deferential review, then I would not need to address whether the Government is correct in its reading of *Wilkinson*. *See Fon*, 34 F.4th at 813 n.1 (declining to address the standard-of-review question, because the petitioner would prevail under either standard). But I think this case is close enough to the line that it is one in which the standard of review *does* make a critical difference. If I must apply a deferential standard of review—*i.e.*, one in which I am limited to asking whether the agency's conclusion is *reasonable* or whether a contrary conclusion is *compelled*—then I would hold that the agency permissibly adopted the view that Rodriguez-Patlan's mistreatment did not rise to the level of persecution.

3

Accordingly, this case, in my view, requires addressing what standard of review applies here and, in particular, whether the Government is correct in contending that *Wilkinson* confirms that deferential review applies. As a review of *Wilkinson* shows, the answer to the latter question is yes.

In *Wilkinson*, an immigration judge ("IJ") rejected Wilkinson's application for cancellation of removal under § 240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b), concluding that Wilkinson had failed to establish the threshold statutory requirement that his removal would result in "exceptional and extremely unusual hardship" to a family member who was a U.S. citizen or permanent resident. *Wilkinson*, 601 U.S. at 211–12 (quoting 8 U.S.C. § 1229b(b)(1)(D)). "Because [the IJ] held that Wilkinson was statutorily ineligible for cancellation of removal," the IJ did not reach the further step of "determining whether or not to exercise his discretion to grant the application for cancellation of removal." *Id*. at 216 (simplified). After the BIA affirmed, Wilkinson filed a petition for review, but the Third Circuit held that it lacked jurisdiction to review the "hardship determination," which it characterized as "discretionary." *Id*.

The Supreme Court reversed, holding that "the application of the exceptional and extremely unusual hardship standard to a given set of facts is reviewable as a question of law" under INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). *Wilkinson*, 601 U.S. at 217. The Court reasoned that "the application of the statutory

4

'exceptional and extremely unusual hardship' standard to a given set of facts presents a mixed question of law and fact" and that "mixed questions of law and fact are *always* reviewable as questions of law under § 1252(a)(2)(D)." *Id*. at 219, 221 (emphasis added). The Court acknowledged that some mixed questions entail "primarily . . . factual work," while others involve "primarily legal . . . work." *Id*. at 221–22 (citation omitted). But the Court held that the fact "[t]hat a mixed question requires a court to immerse itself in facts does *not* transform the question into one of fact." *Id*. at 222 (emphasis added). Instead, the Court explained, "[i]t simply suggests a more deferential standard of review." *Id*. And because "application of [the] legal standard" of "exceptional and extremely unusual hardship" to a given set of facts "require[s] an IJ to closely examine and weigh a set of established facts," "this mixed question is primarily factual," and a court's review of the agency's resolution of that mixed question "is deferential." *Id*. at 221, 225 (citations omitted).

Here, as in *Wilkinson*, the application of the relevant legal standard—*viz*., whether the facts concerning a petitioner's mistreatment rise to the level of "persecution"—"requires a close examination of the facts" and is therefore "primarily factual" rather than "primarily legal." 601 U.S. at 221–22, 225 (citation omitted). Accordingly, our "review is deferential," *id*. at 225, and, applying that deferential review, I would uphold the agency's determination that Rodriguez-

Patlan failed to establish his statutory eligibility for withholding of removal. I therefore concur in the judgment as to the issue of withholding of removal.

The majority holds that, because Rodriguez-Patlan would *lose* under either a deferential standard or a de novo standard, it need not decide which standard of review is applicable. *See* Memo. Dispo. at 5. I disagree with that conclusion—because I think that Rodriguez-Patlan should prevail under de novo review—but I acknowledge that reasonable minds can differ on that point. However, despite having concluded that it need not resolve the standard-of-review issue, the majority then gratuitously proceeds to assert that *Wilkinson* does not resolve that issue here. *Id*. at 2–5. The latter conclusion is wrong, as the paucity of the majority's reasoning makes clear.

The majority contends that *Wilkinson* is irrelevant because it "was concerned with the distinct issue of federal court jurisdiction over 'judgment[s] regarding the granting of [*discretionary*] relief' such as cancellation of removal, and did not address the separate question presented here: what standard of review should govern *nondiscretionary* claims for asylum and withholding of removal which are reviewable under 8 U.S.C. § 1252(d)(1)." *See* Memo. Dispo. at 4 (emphasis added). This purported ground for distinguishing *Wilkinson* is flatly incorrect. Contrary to what the majority contends, *Wilkinson* <u>did</u> involve review of a threshold nondiscretionary question, and the Court's comments about a

"deferential" standard of review were directed to that nondiscretionary determination. As the Court explained, a decision on cancellation of removal "proceeds in two steps": the first asks whether the alien "is *eligible* for cancellation under the relevant statutory criteria," and the second requires the IJ to "decide[] whether to exercise his discretion favorably." *Wilkinson*, 601 U.S. at 212 (emphasis added). Wilkinson did not dispute that the second question was discretionary and unreviewable, but he argued that the first question was neither. *See id*. at 216–17, 221. The Court agreed that the "hardship determination" on which Wilkinson's statutory eligibility turned "*was not discretionary*." *Id*. at 218 (emphasis added).[1] The Court then proceeded to hold, as I have described, that this *nondiscretionary* mixed question of law and fact was reviewable as a question of law, but that this mixed question was primarily factual and therefore subject to deferential review. The majority's effort to distinguish *Wilkinson* as a case about review of "judgments regarding the granting of discretionary relief," *see* Memo. Dispo. at 4 (simplified), is thus demonstrably wrong.

The majority also contends that "*Wilkinson*'s statement that a mixed question

---

[1] In this respect, cancellation of removal is similar to asylum, which has a threshold nondiscretionary eligibility requirement that, if met, leads to an exercise of discretion whether to grant asylum, *see Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004), although (unlike cancellation of removal), discretionary asylum decisions are reviewable for abuse of discretion, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(4)(D). The majority therefore contradicts well-settled law in characterizing "asylum" as a "nondiscretionary claim[]." *See* Memo. Dispo. at 4.

requiring an 'immers[ion]' in facts 'suggests a more deferential standard of review,' does not address whether a past persecution claim such as Petitioner's, which involves the application of a legal standard to an undisputed set of facts, should be reviewed de novo or for substantial evidence." *See* Memo. Dispo. at 4 (citation omitted). But the statutory standard applied in *Wilkinson* likewise required "the application of a legal standard to established facts," and the "primarily factual" nature of that inquiry required "deferential" review. *Wilkinson*, 601 U.S. at 221, 225 (citation omitted). The same is true here: applying the "level of persecution" standard requires "an immersion in facts," and under *Wilkinson* it therefore is reviewed deferentially.[2]

    For the foregoing reasons, I concur in sections 1 and 3 of the majority's memorandum, but I concur only in the judgment as to section 2.

---

[2] The majority also suggests that *Wilkinson* is irrelevant because the factual determinations underlying the nondiscretionary eligibility determination at issue there were unreviewable. *See* Memo. Dispo. at 4 n.1. But nothing in *Wilkinson* suggests that, in deciding what level of deference to give to an application of a legal standard to "established facts," it makes a difference *why* those facts are taken as established (*i.e.*, because they are unreviewable or because they have survived the INA's highly deferential review of factual determinations). *Wilkinson*, 601 U.S. at 792–93.