**Yoram BAR–LEVY, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 889, Docket 92–4188.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 5, 1993.

Decided March 29, 1993.

Lawrence M. Wilens, New York City (Wilens & Baker, of counsel), on brief, for petitioner.

Diogenes P. Kekatos, Asst. U.S. Atty. for S.D.N.Y. (Otto G. Obermaier, U.S. Atty. for S.D.N.Y., Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel), for respondent.

Before: MESKILL, Chief Judge, FEINBERG, and WINTER, Circuit Judges.

FEINBERG, Circuit Judge:

Yoram Bar–Levy petitions for review of a decision of the Board of Immigration Appeals (BIA) upholding an immigration judge's decision finding him deportable under section 241(a)(11) of the Immigration and Nationality Act of 1952 (the Act), 8 U.S.C. § 1251(a)(11), and denying his application for a waiver of deportation under section 212(c) of the Act, 8 U.S.C. § 1182(c). Bar–Levy does not dispute that while in this country he was convicted of a narcotics offense and is therefore deportable. The only issue he raises on appeal is whether the BIA abused its discretion in denying his application for a waiver of deportation. The government argues that we should dismiss Bar–Levy's petition because he failed to surrender to the immigration authorities following this court's denial of a stay of deportation. For the reasons stated below, we dismiss the petition on the ground urged and therefore need not consider the government's alternative argument that the BIA's decision represents a proper exercise of its considerable discretion.

## I.

Bar–Levy was born in Israel and became a lawful permanent resident of the United States in September 1976. In September 1982, after a guilty plea in the United States District Court for the Eastern District of New York, Bar–Levy was convicted of importing a substantial quantity of cocaine and was sentenced to three years in prison. On the basis of this conviction, the Immigration and Naturalization Service (INS) in April 1985 charged him as deportable under section 241(a)(11) of the Act.

At Bar–Levy's deportation hearing, he conceded his deportability but pressed his claim that he was entitled to discretionary relief, specifically, a waiver of deportation under section 212(c), because he had family and business ties to the United States. In October 1987, the immigration judge denied this claim.

Bar–Levy appealed the immigration judge's decision to the BIA, arguing that the immigration judge had abused his discretion in denying section 212(c) relief. In particular, Bar–Levy claimed that he merited a section 212(c) waiver of deportation because he had demonstrated rehabilitation and because he was the father of two children who were United States citizens and who would experience great hardship in the event he was deported.

In September 1992, the BIA upheld the immigration judge's denial of a section 212(c) waiver. The BIA noted that while Bar–Levy's crime was his first conviction, it was an "extremely serious drug offense" in which he had "active[ly] participat[ed]." In addition, the BIA noted that Bar–Levy had been out of prison for only a few years and was still subject to special probation, making it "unclear whether his good behavior was the result of rehabilitation or the fact that he was still subject to scrutiny." Accordingly, the BIA determined that Bar–Levy did not merit a favorable exercise of discretion and dismissed his appeal.[1]

Bar–Levy filed a timely petition for review in this court. He was not eligible for an automatic stay of deportation because the crime for which he was convicted was an aggravated felony. See 8 U.S.C. § 1105a(a)(3). Accordingly, Bar–Levy filed a motion for a discretionary stay of deportation pending this court's disposition of his petition for review of the BIA's decision. On November 4, 1992, a panel of this court denied Bar–Levy's request for a stay. Subsequently, the INS issued a notice to Bar–Levy to surrender for deportation on December 1, 1992. He did not comply with that notice and remains a fugitive.

## II.

Bar–Levy has failed to surrender for deportation. In our view, this makes him a "fugitive from justice" and therefore brings him within the ambit of cases in which courts exercise their discretion to dismiss appeals by fugitives.

---

1. Shortly after the BIA rendered its decision, Bar–Levy filed a motion for reopening and reconsideration of the BIA's decision. We are informed that the motion was denied on February 17, 1993.

■ It is well established that courts have the authority to dismiss *criminal* appeals when their jurisdiction is invoked by a fugitive from justice. See, e.g., *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975) (per curiam); *United States v. Eng,* 951 F.2d 461, 465 (2d Cir.1991). The Supreme Court's most recent pronouncement on the subject is the following:

> [O]ur cases consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during "the ongoing appellate process."

*Ortega–Rodriguez v. United States,* —— U.S. ——, ——, 113 S.Ct. 1199, 1204, 122 L.Ed.2d 581 (1993) (affirming rule of *Estelle,* but disapproving its application to fugitive recaptured *prior* to filing of appeal).

This court has identified four rationales for the rule.

> First, a decision respecting a fugitive is effectively unenforceable because the fugitive is beyond the control of the court.... Second, loss of appellate review is appropriate because the fugitive flouts the judicial process by escaping.... Third, a rule of dismissal has the salutary effects of discouraging escape and promoting the efficient operation of the appellate courts.... Fourth, the delay occasioned by the period of a defendant's flight can prejudice the prosecution should a new trial be ordered after a successful appeal.

*United States v. Persico,* 853 F.2d 134, 137 (2d Cir.1988) (citations omitted). We have extended the fugitive from justice rule to *civil* cases in which the appellant is a fugitive in a criminal matter. See, e.g., *United States v. $45,940 in U.S. Currency,* 739 F.2d 792, 796–98 (2d Cir.1984).

■ Although an alien who fails to surrender to the INS despite a lawful order of deportation is not, strictly speaking, a fugitive in a criminal matter, we think that he is nonetheless a fugitive from justice. Like the fugitive in a criminal matter, the alien who is a fugitive from a deportation order should ordinarily be barred by his fugitive status from calling upon the resources of the court to determine his claims. Cf. *Hussein v. INS,* 817 F.2d 63 (9th Cir.1986) (alien's "[e]scape from federal custody is inconsistent with the pursuit of judicial remedies and constitutes a voluntary waiver of any pending judicial review [of his petition for review]"); *Arana v. U.S. INS,* 673 F.2d 75, 77 (3d Cir.1982) (per curiam) (alien subject to order of deportation who concealed whereabouts from immigration authorities and federal courts and failed to comply with order and bench warrant is disentitled from calling upon resources of court for determination of habeas corpus claims). An alien who is a fugitive from a deportation order should thus not be permitted to pursue an appeal of the deportation order or a denial of his application for a waiver of deportation. Indeed, in *Arana,* the Third Circuit expressed the view that

> [i]f anything—given the plethora of constitutional and statutory procedural protections that are afforded to criminal defendants but not made available to individuals subjected to administrative deportation proceedings—a court might exercise greater caution in dismissing the appeal of a convicted party who has escaped than of a potential deportee who has absconded.

Id. at 77 n. 2 (citation omitted).

We realize that an alien like Bar–Levy who has been ordered to appear for deportation may be in a worse position than a convicted criminal defendant who has been ordered to surrender. If the latter surrenders, he can still pursue his appeal while serving his sentence. But if an alien surrenders, his deportation may bar judicial review of the deportation order because of 8 U.S.C. § 1105a(c). This section provides that "[a]n order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after issuance of the order." In the recent case of *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993), we held that "[t]he pertinent language of § 1105a(c) constitutes a clear jurisdictional bar, and admits of no exceptions."

Nonetheless, as Judge Mahoney's thorough opinion in that case points out, id. at

89–91, there is a sharp conflict among the circuits as to the meaning of the jurisdictional bar set forth in § 1105a(c). Thus, the Tenth and Fifth Circuits have read section 1105a(c) literally. See, e.g., *Saadi v. INS*, 912 F.2d 428, 428 (10th Cir.1990); *Quezada v. INS*, 898 F.2d 474, 476–77 (5th Cir.1990). By contrast, the Ninth Circuit has held that the statutory word "departed" cannot mean "departed in contravention of procedural due process," *Mendez v. INS*, 563 F.2d 956, 958 (9th Cir.1977); see also *Zepeda–Melendez v. INS*, 741 F.2d 285, 287–88 (9th Cir.1984), and the Sixth Circuit has endorsed this view. See *Juarez v. INS*, 732 F.2d 58, 59–60 (6th Cir.1984).

Obviously, the question of how deportation affects an alien's right to make various claims in court calls for resolution by the Supreme Court. In the meantime, we do not believe that the possible adverse consequences to the alien under our ruling in *Roldan* justify a departure from the salutary policies of the "fugitive from justice" rule.

Petition dismissed.