# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-2166

KALIN DIMITROV and ZDRAVKA DIMITROVA,

*Petitioners,*

*v.*

JOHN D. ASHCROFT, Attorney General of the United States,

*Respondent.*

————————

Petition for Review of Orders of the
Board of Immigration Appeals.
Nos. A73-427-543, A73-427-544.

————————

SUBMITTED APRIL 26, 2004—DECIDED MAY 24, 2004

————————

Before POSNER, ROVNER, and EVANS, *Circuit Judges.*

PER CURIAM. On April 13, 2004, Kalin Dimitrov, an alien whose appeal from the denial by the Board of Immigration Appeals of his claim of asylum was pending before this court, was detained by officers of the Department of Homeland Security while trying to get an extension of his work permit. He was told he'd be immediately removed from the country for overstaying his visa. We do not know what time of day that was, but at approximately 4:50 p.m. Dimitrov's lawyer filed with this court a motion for a stay of removal and at 5:30 one of our judges granted a temporary stay pending consideration of the motion by a three-

judge panel. Our Clerk's office was unable, however—either by emailing, faxing, or phoning—to elicit a response from anyone involved in the case at either the Justice Department or the Department of Homeland Security until 9:00 p.m., when a Justice Department attorney emailed the Clerk's office that he would check the status of Dimitrov's removal the next day. That was done and, fortunately, Dimitrov had not yet been removed. But the government's failure to make a prompt and effective response to the notice of our stay impelled us to order the Justice Department to show cause why it should not be sanctioned for failing to ensure that notice of a stay issued after normal business hours was promptly communicated to the relevant immigration officials.

In its response the government explains that upon receiving either word that a motion for a stay of removal may be filed or a copy of the motion, the Justice Department's Office of Immigration Litigation asks the Department of Homeland Security about the status of the alien's removal and conveys DHS's reply to the court so that we can decide how quickly we should act on the motion. If we then issue a stay the Justice Department attorney assigned to the case informs the appropriate DHS district office and the information is recorded in the alien's file and entered into a DHS database. The DHS's Bureau of Immigration and Customs Enforcement is then responsible for stopping the removal. For stays issued after normal business hours, DHS has furnished the Justice Department with a phone number at which the Department can reach a responsible Bureau official.

In this case, however, after receiving notice at 8:15 p.m. of the temporary stay barring Dimitrov's removal, the Justice Department's attorney was unable to reach anyone at the DHS facility at which Dimitrov was being held. He faxed

and emailed a copy of the stay to the Bureau of Immigration and Customs Enforcement and phoned the Bureau at the special phone number that had been provided to the Justice Department. No one answered. He left a voicemail message rather than making a further effort to reach the Bureau.

This was a potentially fatal breakdown in the established procedures. The government says it was harmless because Dimitrov was not in any danger of being removed: "the Broadview facility where Mr. Dimitrov was being held is not a 24-hour facility" and "aliens are ordinarily not removed from that facility after normal business hours. Aliens are only removed after-hours from that facility if the alien has completed removal processing and is scheduled to leave on an after-hours flight." Dimitrov had just been detained, so his removal was not imminent. It usually takes several days to complete the paperwork necessary for removing an alien, in which event the alien's lawyer has plenty of time in which to move for a stay.

Yet situations do arise in which time is of the essence. The government acknowledges that some aliens, including Mexican and Canadian nationals, and "certain fugitives" (we are not told which), are often removed from the U.S. on the same day they are taken into custody. Without sound procedures, consistently applied, to ensure that stays are promptly executed, some aliens may slip through the cracks and be removed despite the existence of the stay. This has happened. See, e.g., *Lindstrom v. Graber*, 203 F.3d 470, 474 (7th Cir. 2000); *Singh v. Waters*, 87 F.3d 346, 347 (9th Cir. 1996).

Recognizing the insufficiency of its current procedures, the government has provided the court with a list of emergency phone numbers of DHS supervisors in the states of the Seventh Circuit. In addition, the government tells us that DHS officers in charge of removing aliens often check

this court's docket on the Internet to ascertain that there is no stay in place before physically removing an alien and that the Ninth Circuit and DHS have developed a system whereby the court emails stays to an Internet address at the local DHS office that is reviewed by DHS officials. When an email is received, notification is sent to the court so that the court knows that the Justice Department notified DHS of the stay. The government expresses its willingness to make a similar arrangement with this court, and we encourage it do so.

In view of the government's constructive response and the fact that the stay was not in fact violated and that the government's carelessness did not impose legal expenses on the alien, the order to show cause is discharged.


A true Copy:

        Teste:


                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*