# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1435

VASSIL SAPOUNDJIEV, ENCHEVA SAPOUNDJIEV,
and HRISTO C. SAPOUNDJIEV,

*Petitioners,*

*v.*

JOHN ASHCROFT, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals

SUBMITTED MAY 27, 2004—DECIDED JULY 22, 2004

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* An immigration judge concluded that Vassil Sapoundjiev, a citizen of Bulgaria, is not entitled either to asylum or to withholding of removal. On January 28, 2004, the Board of Immigration Appeals affirmed that decision, which affected not only Vassil but also his wife Encheva and son Hristo, for their applications are derivative from his. Immigration officials sent the three

Sapoundjievs notices (often called bag-and-baggage letters) directing them to report for custody and removal on May 13, 2004. Six days before that date arrived, the Sapoundjievs filed an application for stay of removal. On May 12 a judge entered a temporary stay of removal pending a response by the Attorney General. This order did not affect the Sapoundjievs' obligation to surrender, so that removal could be implemented if the stay should be lifted. Nonetheless, the family did not report as directed. Contending that the Sapoundjievs are fugitives, the Attorney General has asked us to vacate the temporary stay and deny any further relief.

Every circuit that has considered the issue has concluded that the fugitive-disentitlement doctrine applies to immigration cases, and that aliens who avoid lawful custody forfeit judicial review. See *Bar-Levy v. INS*, 990 F.2d 33 (2d Cir. 1993); *Arana v. INS*, 673 F.2d 75 (3d Cir. 1982); *Antonio-Martinez v. INS*, 317 F.3d 1089 (9th Cir. 2003); *Zapon v. Department of Justice*, 53 F.3d 283 (9th Cir. 1995). Litigation entails reciprocal obligations: an appellant (or petitioner) who demands that the United States respect a favorable outcome must ensure that an adverse decision also can be carried out. See, e.g., *Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993); *Smith v. United States*, 94 U.S. 97 (1876). When an alien fails to report for custody, this sets up the situation that *Antonio-Martinez* called "heads I win, tails you'll never find me". 317 F.3d at 1093. A litigant whose disappearance makes an adverse judgment difficult if not impossible to enforce cannot expect favorable action. See *Degen v. United States*, 517 U.S. 820 (1996). We observed in *Sarlund v. Anderson*, 205 F.3d 973 (7th Cir. 2000), that after *Degen* a practical question dominates: has flight made the litigation a one-way street? Someone who cannot be bound by a loss has warped the outcome in a way prejudicial to the other side; the best solution is to dismiss the proceeding. That

proposition is as applicable to the fugitive alien as it is to the fugitive criminal defendant (or, in *Sarlund*, the fugitive civil plaintiff).

Counsel representing the Sapoundjievs contends that, because immigration officials know where the family lives, they are not trying to have things both ways. Now it is far from clear that the Sapoundjievs will choose to be at home when agents arrive to arrest them, and hard to see how the judiciary could tell whether to believe a promise to show up if the case should be decided adversely. The point of custody is to end the guessing game. That's why anyone who is told to surrender, and does not, is a fugitive.[†] See *Bar-Levy*, 990 F.2d at 34. This court issued a temporary stay of removal, *not* a grant of bail pending removal. That agents may be able to locate an absconder does not make him less a fugitive. Like-

---

[†] In a brief filed at our request as *amicus curiae* on behalf of the alien in *Zheng v. Ashcroft*, No. 03-1185, attorney Laura E. Juhnke contends that under *United States v. Marshall*, 856 F.2d 896, 899-900 (7th Cir. 1988), and *United States v. $40,877.59*, 32 F.3d 1151, 1156 (7th Cir. 1994), only a person who has left the state may be treated as a fugitive. The issue in *Marshall* was not the fugitive-disentitlement doctrine but the statute of limitations, and though language about absence from the state was quoted in *$40,877.59* (which anticipated *Degen* by holding that a person's fugitive status does not bar defense of a civil forfeiture action) it was not important to the holding or judgment of that decision. It is hard to see why absence from a state should be indispensable; the only way prosecutors or immigration officials could *know* whether a person is or is not in a given state would be to have him in custody. Fugitives may hide out near home, where they have friends willing to conceal them. None of our fugitive-disentitlement decisions turns on proof that the missing person is in a different state, and it would not be sound to adopt such a requirement. Nonetheless, we extend thanks to Ms. Juhnke, whose brief has been helpful to us in both proceedings.

wise a prisoner who walks away from a camp that lacks walls has committed the crime of escape, even if it is easy to track him down—indeed, even if he returns before he is missed. See *United States v. King*, 338 F.3d 794 (7th Cir. 2003). A corporate executive who fails to report at the start of a sentence for antitrust offenses is a fugitive, and his appeal will be dismissed, even if it turns out that he has been relaxing at his country estate and does not plan to put up a fight when apprehended. Just so with an alien who, by failing to report as ordered, retains the option of going underground if the judicial decision is adverse.

We are unimpressed by counsel's argument that aliens are *entitled* to ignore bag-and-baggage letters because custody "prevents Petitioners from having a meaningful opportunity to be heard" on their claims for relief. An appeal in a criminal case remains meaningful even if the defendant is incarcerated while the matter is under advisement. A convict who asserted that he is entitled to appellate review before spending the first day in custody would not fare well. Likewise with aliens. Time in administrative custody differs from removal. Doubtless there is a risk of erroneous removal while the litigation continues, but we have no reason to think that errors are common; immigration officials in this circuit have taken steps to make sure that even after-hours stays will be implemented. See *Dimitrova v. Ashcroft*, 368 F.3d 960 (7th Cir. 2004). The Sapoundjievs received their interim stay the day before they were to report; they could have taken the documents with them, and counsel could have accompanied them to make sure that immigration officials knew that they were entitled to remain in the United States pending further judicial action. Or counsel might have asked for a delay in the date to report or bail pending our decision. The Sapoundjievs are not being removed for serious crimes, so they are entitled to seek conditional release while their petition for review is pending. See 8 U.S.C. §1231(a)(2); 8 C.F.R. §241.33(a); *Demore v. Kim*, 538 U.S. 510 (2003). No such request was made, however, and

at all events the district director's order with respect to bail pending removal is not reviewable in this court, given 28 U.S.C. §1252(a)(2)(B), (g). See *Najjar v. Ashcroft*, 273 F.3d 1330, 1339 (11th Cir. 2001).

*Ortega-Rodriguez* holds that the fugitive-disentitlement doctrine applies only while the criminal remains at large. Again the same approach should be applied to alien removal proceedings. Two months have passed since the Attorney General invoked the fugitive-disentitlement doctrine as the basis for his opposition to the Sapoundjievs' request for a stay of removal and his request that their petition be denied. They did not surrender in order to preserve their legal claims; to the contrary, as we have recounted, they have asserted through counsel that they are entitled to ignore the bag-and-baggage order and wait for agents to locate and arrest them. Consequently, the temporary stay is vacated, the motion for stay of removal is denied, and the petition for review is dismissed.

A true Copy:

      Teste:

 

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*