**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 29, 2005
Decided February 22, 2006

**Before**

Hon. Daniel A. Manion, *Circuit Judge*

Hon. Ann Claire Williams, *Circuit Judge*

Hon. Diane S. Sykes, *Circuit Judge*

No. 05-2013

| | |
|---|---|
| AHOUA DEMBELE,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A70-894-370 |
| ALBERTO R. GONZALES, Attorney<br>General of the United States,<br>    *Respondent*. | |

**O R D E R**

Petitioner Ahoua Dembele is a 31-year-old native of the Ivory Coast. Like other female members of her ethnic group, she suffered genital mutilation during childhood. She legally entered the United States on a visitor's visa in 1992, but she was subsequently placed into removal proceedings for overstaying that visa. During her years in the United States, Dembele gave birth to a daughter and a son who are

American citizens. She initially applied for asylum based on her political activities in the Ivory Coast, but an Immigration Judge ("IJ") denied that claim in 1997. The Board of Immigration Appeals ("BIA") affirmed the IJ's ruling without opinion in 2002. While that appeal was pending in 2001, Dembele married an American citizen, Maurice Sims.[1] Following their marriage, Sims filed a visa petition on Demebele's behalf, and the case was reopened and remanded in order to allow her to apply for permanent residency based on the marriage.

At the reopened proceeding for adjustment of status, Dembele admitted that she had been arrested in the United States three times, twice for shoplifting and once for an incident at a United States Passport Office. She explained that in 1998, when her mother became ill, a friend offered to help her get a passport so she could visit the Ivory Coast and then return to the United States. According to her testimony at the hearing, Dembele accompanied her friend to the passport office, and an application was filed using Dembele's picture and her friend's daughter's United States birth certificate. The two women were arrested and detained for about one hour of questioning, but never charged or prosecuted. Dembele asserted at the hearing that she did not realize she was filing a false passport application, and that her friend submitted everything for her. The IJ continued the hearing and asked the parties to

---

[1] Sims is not the biological father of Dembele's daughter; the record is silent as to who is the father of her son. At oral argument, Dembele's counsel indicated that Dembele did not know the whereabouts of her daughter's biological father.

produce documents related to the arrests, particularly the actual passport application, because without those documents, he would be unable to make a determination.

At the follow-up hearing, the government stated that it was unable to obtain the requested documentary evidence from the passport incident. Dembele orally moved to reopen her asylum case based on the probability that her daughter, then eight years old, would be mutilated against her mother's will if the family returned to the Ivory Coast, just as Dembele, her sister, and her nieces were mutilated. The IJ ruled that he had no jurisdiction to reopen Dembele's case for asylum, and in any case, the evidence was insufficient to support that claim. The IJ further ruled that Dembele was barred from permanent residency because she willfully and knowingly made a false claim in her passport application. In a footnote, he noted that this ruling was wholly based on Dembele's own statements and on the record of her arrest, as the government never produced the application. Dembele appealed to the BIA, which dismissed the appeal of the adjustment of status determination and denied Dembele's renewed motion to reopen the case, relying on the same grounds as the IJ on both points.

Dembele appealed to this court, and we heard oral argument on November 29, 2005. While our decision was pending, immigration officials sent Dembele a notice commonly called a "bag-and-baggage" letter, directing her to report for custody and removal on January 19. On that day, Dembele filed an emergency motion to stay removal. This court ordered her to supplement that motion with a statement indicating whether she reported for removal as directed. On January 20, 2006,

Dembele filed the supplement; she did not report and is at large.

This turn of events dictates the outcome of this proceeding. As urged by the respondent in its motion to dismiss, Dembele's failure to surrender to authorities makes her a fugitive, and under the fugitive-disentitlement doctrine, those "who avoid lawful custody forfeit judicial review." *Sapoundjiev v. Ashcroft*, 376 F.3d 727, 728 (7th Cir. 2004). As discussed in *Sapoundjiev*, every circuit that has addressed the question has held that the doctrine applies in immigration cases. *Id*. A litigant cannot request a favorable decision while evading the power of the court to enforce a decision that goes the other way. As the Ninth Circuit put it, "Those who invoke our appellate jurisdiction must take the bitter with the sweet: [t]hey cannot ask us to overturn adverse judgments while insulating themselves from the consequences of an unfavorable result." *Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003). *See also Bar-Levy v. INS*, 990 F.2d 33 (2d Cir. 1993); *Arana v. INS*, 673 F.2d 75 (3d Cir. 1982). Dembele presents no counter-argument; her counsel sought to withdraw the motion to stay removal, but points to no authority suggesting that this appeal should be decided on its merits while the petitioner's whereabouts are unknown.

For the reasons stated above, the motion to stay removal is withdrawn, and the petition for review is dismissed.