FILED
United States Court of Appeals
Tenth Circuit

February 26, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENCH CIRCUIT

LEE MARTIN,

      Petitioner,

v.

MICHAEL B. MUKASEY, United
States Attorney General,[*]

      Respondent.

No. 06-9572

**On Petition for Review of an Order of the
Board of Immigration Appeals**

Submitted on the Briefs:

Sarah Faville of Sandra Saltrese-Miller & Associates, Denver, Colorado, for
Petitioner.

Stephen J. Flynn, Senior Litigation Counsel, and Anh-Thu P. Mai, Attorney,
Office of Immigration Litigation, Civil Division, U.S. Department of Justice,
Washington, D.C., for Respondent.

Before **TYMKOVICH**, **McKAY**, and **SEYMOUR**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2) Michael B. Mukasey is substituted
for Alberto Gonzales as the respondent in this case.

Lee Martin, a native and citizen of England, petitions us for review of a final order of removal from the United States. Based on the fugitive disentitlement doctrine, we dismiss the appeal.

**I**

Mr. Martin is a citizen of England who married a United States citizen in 1998. On June 4, 2000, he filed an application for adjustment of status based on the marriage. The application was denied in March 2001, and the Department of Homeland Security (DHS) instituted removal proceedings against Mr. Martin. At those proceedings, the court found Mr. Martin was removable given that he was an immigrant not in possession of a valid, unexpired travel document or document of identity and nationality at the time he applied for admission to the United States. *See* 8 U.S.C. § 1182 (a)(7)(A)(i)(I).

Mr. Martin moved for cancellation of his removal under the battered spouse provision of 8 U.S.C. § 1229b(b)(2), contending his removal would create an extreme hardship on his young daughter, Emily.[1] *See id.* (Attorney General may cancel removal if alien establishes abuse, physical presence in United States for at least three years, good moral character, and that the removal would result in "extreme hardship to the alien, the alien's child, or the alien's parent."). DHS

---

[1]Mr. Martin is divorced from the woman who abused him. She is not Emily's mother.

contested only the claim of extreme hardship. In March 2005, an Immigration Judge (IJ) denied Mr. Martin's request for cancellation of removal and ordered him removed. When Mr. Martin's motion for reconsideration was denied, he appealed. On July 17, 2006, the Bureau of Immigration Appeals (BIA) affirmed, and Mr. Martin filed this appeal.

Four days after the BIA affirmed the IJ's decision to remove Mr. Martin, DHS sent him and his counsel a notice directing Mr. Martin to appear before DHS on August 7, 2006 to "discuss [his] case and [his] intentions of departing the U.S." Aple. Br., Add. at Att. 1. The notice instructed Mr. Martin to bring with him various United States identity documents and a "[o]ne-way, non-refundable ticket to ENGLAND FOR USE ON OR BEFORE August 14, 2006." *Id.* After Mr. Martin failed to report for the meeting, a warrant was issued for his arrest.

DHS made repeated attempts to locate Mr. Martin. The agency discovered that shortly after the notice was sent, Mr. Martin resigned from his employment, advising his employer that he was scheduled to be deported and could not provide the requisite documentation. He could not be found at his last known address, 515 Amy's Way in Grand Junction, Colorado, and had not advised DHS of a change of address as required by law. 8 U.S.C. § 1305(a); 8 C.F.R. § 265.1. Subpoenaed utility records indicated an address for Mr. Martin of 2931 Bunting in Grand Junction, Colorado, but the landlord advised DHS that Mr. Martin had vacated the premises after October 2006 without giving notice. Family and friends who were

interviewed said they were not aware of his current location and did not know how to reach him. The mother of his child stated she had not had recent contact with him. While Mr. Martin has continued to pursue this appeal through counsel, he has not presented himself to DHS or made any information about himself known to them since he was ordered removed.

DHS maintains that Mr. Martin has absconded and asks us to dismiss his appeal on the basis of the fugitive disentitlement doctrine. In response, counsel for Mr. Martin asserts the government failed to establish that Mr. Martin received notice of the appointment he missed, or that Mr. Martin is, in fact, a fugitive. He also contends we should exercise our discretion and refuse to apply the doctrine to this appeal. He argues, in the alternative, that applying the doctrine would be unconstitutional. We address each argument in turn.

## II

### A.    Notice

Initially, we address Mr. Martin's argument regarding sufficiency of notice to him of the order to appear before DHS. He maintains that a Mr. Fraser and/or a Melody Fraser — both of whom Mr. Martin denies knowing — signed for the registered letter DHS attempted to send to Mr. Martin notifying him of the removal proceedings. But notice was also mailed to Mr. Martin's counsel, who does not deny receiving it.

"It is a longstanding principle that in our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Garcia v. I.N.S.*, 222 F.3d 1208, 1209 (9th Cir. 2000) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 634 (1962)) (internal citation and quotation omitted); *see also Bruce J. Pierce & Assoc., Inc. v. Resolution*, 987 F.2d 663, 665 (10th Cir. 1993) (imputing to plaintiff notice received by counsel). DHS's notice to Mr. Martin's counsel satisfies the notice requirement. In addition, Mr. Martin failed to comply with his statutory duty to keep DHS abreast of his whereabouts. This is an additional reason to deny his complaint about lack of notice. *See Antonio-Martinez v. I.N.S.*, 317 F.3d 1089, 1092-93 (9th Cir. 2003) (appeal dismissed under fugitive disentitlement doctrine where alien failed to notify agency of new address).

## B.    Fugitive Status

Next, we consider whether Mr. Martin is actually a fugitive. "Although an alien who fails to surrender to the INS despite a lawful order of deportation is not, strictly speaking, a fugitive in a criminal matter, we think that he is nonetheless a fugitive from justice." *Bar-Levy v. I.N.S.*, 990 F.2d 33, 35 (2d Cir. 1993); *see also Gao v. Gonzales*, 481 F.3d 173, 176 (2d Cir. 2007) ("[F]or an alien to become a fugitive, it is not necessary that anything happen other than a bag-and-baggage letter be issued and the alien not comply with the letter."); *Sapoundjiev v.*

*Ashcroft*, 376 F.3d 727, 729 (7th Cir. 2004) ("[A]nyone who is told to surrender, and does not, is a fugitive."). Here, Mr. Martin not only failed to appear for his scheduled appointment, he also failed to provide DHS with his current address. Given that other courts have found each of these individual failures sufficient to constitute fugitive status in an immigration appeal, we have no reservation about concluding that the two failures together render Mr. Martin a fugitive. *Gao*, 481 F.3d at 176; *Antonio-Martinez*, 317 F.3d at 1092; *Bar-Levy*, 990 F.2d at 35.

**C.     Fugitive Disentitlement Doctrine**

The fugitive disentitlement doctrine permits a court to dismiss a defendant's appeal if he flees while the appeal is pending. "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). The doctrine has its origin in the criminal context, *see Smith v. United States*, 94 U.S. 97, 97 (1876), and arises from a court's inherent authority to protect its proceedings and judgments. *Molinaro v. New Jersey,* 396 U.S. 365, 366 (1970). The rationale for the doctrine lies primarily in concern for the enforceablity of a court's judgments and a "'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment." *Ortega-Rodriguez,* 507 U.S. at 240.

This court has applied the fugitive disentitlement doctrine numerous times

in the criminal appeal context. *See, e.g., United States v. Hanzlicek*, 187 F.3d 1219, 1220 (10th Cir. 1999) (dismissing criminal appeal where defendant failed to report for supervised release following prison term and was declared a fugitive from justice); *see also Brinlee v. Crisp, 608 F.2d* 839, 856-57 (10th Cir. 1979) (upholding denial of habeas corpus petition when state court dismissed criminal defendant's appeal because he was a fugitive), *cert. denied*, 444 U.S. 1047 (1980); *Lopez v. Malley,* 552 F.2d 682, 683 (10th Cir. 1977) (same); *Gonzales v. Stover,* 575 F.2d 827, 828 (10th Cir.1978) (same); *United States v. Swigart,* 490 F.2d 914, 915 (10th Cir.1973) (federal criminal appeal); *United States v. O'Neal,* 453 F.2d 344, 345 (10th Cir.1972) (same). We have also upheld application of the fugitive disentitlement doctrine to support granting a default judgment in a civil forfeiture action. *United States v. Timbers Preserve, Routt Co., Colo.*, 999 F.2d 452, 455 (10th Cir. 1993).

Although we have not had an opportunity to address the matter, many of our sister circuits have applied the doctrine to a pending immigration appeal. S*ee, e.g., Gao*, 481 F.3d at 178; *Garcia-Flores v. Gonzales*, 477 F.3d 439, 442 (6th Cir. 2007); *Sapoundjiev*, 376 F.3d at 728; *Antonio-Martinez*, 317 F.3d at 1092-93; *Bar-Levy*, 990 F.2d at 35; *Arana v. INS*, 673 F.2d 75, 77 (3d Cir. 1982) (per curiam).[2]

---

[2]"Every circuit that has considered the issue has concluded that the fugitive-disentitlement doctrine applies to immigration cases." *Sapoundjiev*, 376 F.3d at 728. *See also Gao*, 481 F.3d at 176.

Today, we follow their lead and sound logic in holding that the fugitive disentitlement doctrine applies in immigration appeals.

Several reasons support our decision to dismiss the pending immigration appeal of a fugitive. *See Ortega-Rodriguez*, 507 U.S. at 240-42. First and foremost is our concern for the enforceablity of our decisions. Without the fugitive present to accept the decision of this court, there is no guarantee that our judgment could be executed. In other words, enforcement is likely to occur only if we should decide in favor of the fugitive immigrant. *See Antonio-Martinez*, 317 F.3d at 1093 ("heads you win, tails you'll never find me."). "The reasoning in support of such dismissals is that, if the case were affirmed, the appellant in all likelihood would not surrender . . . . We are accordingly reluctant to decide what may prove to be a moot case." *Lopez,* 552 F.2d at 683.

The possible inability to enforce our decision leads us to the second reason for applying the fugitive disentitlement doctrine: "the need for a sanction to redress the fugitive's affront to the dignity of the judicial process." *Gao*, 481 F.3d at 176. Simply put, "a fugitive from justice should not be able to use the judicial system while at the same time avoiding it." *Timbers Preserve*, 999 F.2d at 453. Moreover, "dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice.'" *Hanzlicek*, 187 F.3d at 1220 (quoting *Ortega-Rodriquez*, 507 U.S. at 242).

Application of the facts to this case illustrates the many reasons behind the doctrine. Should we decide to affirm the BIA's decision, our decision would be virtually superfluous. Because Mr. Martin is nowhere to be found, the decision to deport him would mean nothing unless and until he turned himself in or was found. This worthless judgment, in turn, would be an encouragement to like-minded litigants. In short, if we allow Mr. Martin to pursue his appeal in these circumstances, we risk the integrity of the judicial institution and encourage the recourse of flight. Meanwhile, the government and the judicial system would have wasted time and resources defending and processing an appeal, the result of which could not be enforced. Accordingly, we find no reason not to apply the doctrine in the context of immigration appeals.

**D.    Constitutionality**

Mr. Martin points out that the Supreme Court has never applied the fugitive disentitlement doctrine outside the context of a criminal case where the petitioner was an escapee or fugitive from custody, and he contends it would be unconstitutional to extend application of the doctrine to an immigrant's deportation appeal. Other circuits, however, have flatly rejected the claim that a fugitive immigrant appealing his deportation order is entitled to greater constitutional protection than a fugitive criminal defendant filing a direct appeal. As the Third Circuit explained,

> [N]othing in the Supreme Court's opinion [upholding the fugitive

disentitlement doctrine] suggests that the rule announced there is applicable only in the criminal-law context. If anything — given the plethora of constitutional and statutory procedural protections that are afforded to criminal defendants but not made available to individuals subjected to administrative deportation proceedings, *see, e.g.*, *Abel v. United States*, 362 U.S. 217, 237, 80 S. Ct. 683, 696, 4 L. Ed. 2d 668 (1960) — a court might exercise greater caution in dismissing the appeal of a convicted party who has escaped than of a potential deportee who has absconded.

*Arana*, 673 F.2d at 77 n.2.

Martin relies on *Ortega-Rodriguez*, 507 U.S. 234 (1993), and *Degen v. United States*, 517 U.S. 820 (1996), to support his argument that the Supreme Court intends the fugitive disentitlement doctrine to be limited. Neither of these cases supports his contention that application of the doctrine to immigration appeals would be unconstitutional.

In *Ortega-Rodriguez*, the defendant disappeared after he was convicted on drug related charges, but was recaptured before he was sentenced by the district court. *Ortega Rodriguez*, 507 U.S. at 236-37. The Court concluded that his appeal should not be dismissed on the basis of the fugitive disentitlement doctrine. *Id.* at 251. The Court emphasized that the district court had the tools it needed to punish the defendant for disobeying the court's order, for example, by holding him in contempt. *Id.* at 245-47. Furthermore, there was no question that the appeals court could enforce its judgment because the defendant had been recaptured and was currently in custody. *Id.* at 244. The doctrine, therefore, had little utility under the facts.

-10-

In *Degen*, a federal grand jury indicted the defendant for distributing marijuana, laundering money, and related crimes. *Degen*, 517 U.S. at 821. The government filed a contemporaneous civil forfeiture complaint against him. Degen lived in Switzerland and refused to return to the United States to face criminal charges. *Id.* at 822. While remaining outside the country, Degen filed an answer in the civil forfeiture action. Applying the fugitive disentitlement doctrine, the district court in the forfeiture case entered summary judgment against Degen, holding that he was not entitled to be heard in the civil action because he remained outside the country. *Id.*

The primary concern advanced by the government in *Degen* was that Degen might "use the rules of civil discovery in the forfeiture suit to gain an improper advantage in the criminal matter, prying into the prosecution's case in a manner not otherwise permitted." *Id.* at 826. On appeal, the Supreme Court concluded that the district court could use its usual authority to manage discovery in a civil suit to ensure that Degen did not abuse the discovery process. *Id.* at 826-28. The severe sanction of dismissal of his defense was unnecessary to address the concerns raised by the government. "A court's inherent power is limited by the necessity giving rise to its exercise. There was no necessity to justify the rule of disentitlement in this case; to . . . grant judgment against him would be an excessive response to the concerns here advanced." *Id*. at 829.

This case is not like *Ortega-Rodriguez* or *Degan*. Here an alternative

-11-

mechanism is not available to address the concerns raised by the government. Most notably, Mr. Martin has not proposed a means of ensuring that we will be able to enforce our decision should we affirm the deportation order issued by the BIA. Additionally, in *Degen*, application of the fugitive disentitlement doctrine would have prevented Degen from defending claims against his property in any forum unless he returned to the United States.[3] Mr. Martin, on the other hand, has already had the opportunity to argue his case before an immigration judge and the BIA. For these reasons, the Court's decisions in *Ortega-Rodriguez* and *Degen* do not support his argument that it would be unconstitutional to apply the doctrine to him.

The fugitive disentitlement doctrine is discretionary. *See Swigart*, 490 F.2d at 915 ("[W]e believe any court has the inherent discretion to refuse to hear the claim of a litigant who is willing to comply with that court's decree only if it is favorable."). Mr. Martin contends we should decline to apply it to him because of the special protection Congress has accorded battered immigrant spouses. We are not persuaded. That Mr. Martin may be entitled to remain in the United States under circumstances not available to other undocumented aliens does not privilege him to flout the authority of this court by making himself unavailable for the

---

[3]The Court declined to address whether barring Mr. Degen from defending his property claim in the United States would have violated the Due Process Clause. *Degen*, 517 U.S. at 828.

enforcement of any adverse judgment we might render.  There are no circumstances here persuading us to decline application of the fugitive disentitlement doctrine.

Mr. Martin has offered no explanation whatsoever for his fugitive status, and it appears he has absconded.  As a matter of policy, we dismiss the appeal to discourage other petitioners from fleeing to evade the finality of a lawful deportation order.

Accordingly, the appeal is **DISMISSED**.