Qian GAO, Petitioner,

v.

Alberto GONZALES, Attorney General, Respondent.

Docket No. 05–5013–ag.

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 2006.

Decided March 20, 2007.

Aleksander B. Milch, New York, N.Y. (Christophe & Associates, P.C., New York, NY, of counsel), for Petitioner.

Nicole Gueron, Assistant United States Attorney, New York, N.Y. (Michael J. Garcia, United States Attorney, Sarah S. Normand, Assistant United States Attorney, Southern District of New York, New York, NY, of counsel), for Respondent.

Before JACOBS, Chief Judge, CARDAMONE, and MINER, Circuit Judges.

CARDAMONE, Circuit Judge.

This is an appeal from the denial by the Board of Immigration Appeals of petitioner's motion to reopen his proceedings. The petitioner is now a fugitive, and because of that status is subject to having his appeal dismissed under the fugitive disentitlement doctrine. In a number of contexts, it is established that litigants who flee the reach of the courts risk losing the right of access to them. A criminal defendant who fails to appear at trial risks being tried *in absentia;* a litigant who fails to timely respond to a civil suit risks default judgment; on similar reasoning, an alien who fails to comply with a notice to surrender for deportation risks losing the right to appeal that deportation.

Qian Gao (Gao or petitioner) petitions for review of a September 12, 2005 order of the Board of Immigration Appeals (BIA or Board) denying, as untimely, his motion to reopen his removal proceedings. On May 14, 1996, Immigration Judge Patricia A. Rohan (IJ) denied Gao's application for asylum and withholding of removal based on her finding that he lacked credibility and had failed to provide sufficient corroboration for his claims of persecution. The BIA summarily dismissed the appeal for failure to file a brief on December 30, 1996. Although Gao was granted 30 days from the date of the BIA's order to depart the country voluntarily, he failed to do so, and subsequently he ignored a lawful order issued on December 12, 1997 to surrender for deportation.

For the past ten years, Gao has continued to live in the United States illegally and to this day has failed to comply with the order to surrender to immigration authorities. He now seeks to reopen his asylum application, alleging changed country circumstances and the existence of previously unavailable material evidence. The BIA denied the motion to reopen as untimely under 8 C.F.R. § 1003.2(c)(2), because petitioner had not established changed country circumstances, which would render timeliness immaterial under 8 C.F.R. § 1003.2(c)(3)(ii). Gao now petitions this Court for review of the BIA's order and decision. Using our equitable discretion under the fugitive disentitlement doctrine, we dismiss the petition.

BACKGROUND

The facts in this case are straightforward and largely uncontested. Gao is a 36–year–old male from Fujian province in the People's Republic of China (China). Twelve years ago on November 9, 1994 he entered the United States illegally near Miami, Florida. Shortly after entering the country, Gao filed an application for asylum and withholding of removal in which

he claimed he had been repeatedly persecuted in China because of his Buddhist religious beliefs.

Petitioner's application for asylum and withholding of removal was denied by the IJ in her May 14, 1996 oral decision. The IJ found Gao had failed to provide a consistent account of the events leading up to his departure from China and had not provided any corroborative evidence of his claims of persecution. After the BIA dismissed Gao's appeal on December 30, 1996, petitioner was granted 30 days from the date of the BIA order to depart the country voluntarily or else be deported. The BIA's decision was not appealed.

Subsequent to these proceedings, Gao did not depart the country voluntarily. Immigration officials sent him a notice to surrender for deportation (often called a bag-and-baggage letter) dated December 12, 1997, and petitioner signed a domestic return receipt form acknowledging receipt of this notice on January 12, 1998. The notice directed Gao to report for custody and removal on January 22, 1998. Nonetheless, he never reported for custody. For the next seven years, Gao neglected to contact immigration authorities. We now learn that during this time he married and had two children. In other words, petitioner continued to carry on his life in complete disregard of the outstanding bag-and-baggage letter and deportation order against him.

On July 1, 2005 petitioner filed with the BIA the motion that is the subject of his appeal. He asserts the birth of his two children in the United States puts him and his family at risk of persecution under China's family planning policy. Although motions to reopen ordinarily must be filed within 90 days of the entry of the final administrative decision, 8 C.F.R. § 1003.2(c)(2), Gao claims the 90–day time limit does not apply to him because he has produced evidence of changed country circumstances in China and therefore falls under the exception in 8 C.F.R. § 1003.2(c)(3)(ii). The BIA denied the motion to reopen, and Gao has appealed.

## DISCUSSION

### The Fugitive Disentitlement Doctrine

#### A. *General Principles*

The fugitive disentitlement doctrine is an equitable doctrine that provides courts with discretion to dismiss the appeal of a defendant or petitioner who is a fugitive from justice during the pendency of the appeal. First applied by the Supreme Court in the late nineteenth century, *Smith v. United States*, 94 U.S. 97, 24 L.Ed. 32 (1876), the doctrine is now well established. *See, e.g., Ortega–Rodriguez v. United States*, 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) ("It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal."); *Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam) (noting state disentitlement statute providing for automatic dismissal of appeals by defendants who escape during pendency of appeal and do not return within ten days); *Eisler v. United States*, 338 U.S. 189, 190, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949) (per curiam) (removing case from docket because petitioner fled country); *see also Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) ("We have sustained, to be sure, the authority of an appellate court to dismiss an appeal or writ in a criminal matter when the party seeking relief becomes a fugitive.").

While the "paradigmatic object of the doctrine is the convicted criminal who flees while his appeal is pending," *Anto-*

*nio–Martinez v. INS,* 317 F.3d 1089, 1092 (9th Cir.2003), we have also long held that the doctrine applies with full force to an alien who fails to comply with a notice to surrender for deportation, *see Bar–Levy v. U.S. Dep't of Justice, INS,* 990 F.2d 33, 35 (2d Cir.1993). Like the criminal defendant fleeing after his conviction, an alien who fails to comply with an outstanding notice to surrender is a fugitive from justice. *See id.* (holding that the alien became a fugitive upon failing to comply with a notice to surrender for deportation). We have previously observed that an alien may be a fugitive even if his home address and place of employment are known to authorities. *Ofosu v. McElroy,* 98 F.3d 694, 700 (2d Cir.1996). This is because "the INS must deploy resources to bring him in. And, of course, he may not be so easy to find once his litigation options are exhausted." *Id.* Thus, for an alien to become a fugitive, it is not necessary that anything happen other than a bag-and-baggage letter be issued and the alien not comply with that letter. "Everyone understands that the [government] is overwhelmed with petitioners and procedures, and that it heavily relies on the word and voluntary compliance of numerous aliens within our borders. It is easy to game this system, but we should not treat disregard of [government] directives as a norm...." *Id.* at 702–03. Applying the fugitive disentitlement doctrine to fugitive aliens accords with the approach taken by every circuit that has considered the issue. *See Sapoundjiev v. Ashcroft,* 376 F.3d 727, 728–29 (7th Cir. 2004); *Antonio–Martinez,* 317 F.3d at 1092; *Arana v. INS,* 673 F.2d 75, 77 (3d Cir.1982) (per curiam).[1]

We have articulated several reasons why the inherent power of the court to manage its own affairs should be used to dismiss an appeal of a party who is a fugitive during the pendency of the appeal. *See Empire Blue Cross & Blue Shield v. Finkelstein,* 111 F.3d 278, 280 (2d Cir.1997). Those reasons include the difficulty of enforcing any judgment rendered against a fugitive; the need for a sanction to redress the fugitive's affront to the dignity of the judicial process; the desire to promote the efficient operation of the courts by deterring escape; and finally, the need to redress any prejudice to the government occasioned by the fugitive's absence. *See id.* When a litigant becomes a fugitive during the pendency of an appeal to escape the effect of judgment, we have observed that any one of these rationales provides a sufficient basis for us to dismiss the appeal. *United States v. Awadalla,* 357 F.3d 243, 247 (2d Cir.2004).

The Supreme Court in *Degen* ruled that two of these rationales—imposing a penalty for flight and deterring future flight—do not support dismissal of a civil litigant's appeal due to his fugitive status in a separate criminal matter. *Degen,* 517 U.S. at 828–29, 116 S.Ct. 1777. The Court noted that the sanction of disentitlement is "most severe" and, if applied too freely, "could disserve the dignitary purposes for which it is invoked." *Id.* at 828, 116 S.Ct. 1777. Applying the fugitive disentitlement doctrine too liberally—for example, to bar a criminal fugitive from defending his property in a civil forfeiture action—is inappropriate because it is "an arbitrary response to the conduct it is supposed to redress or discourage," and in that way erodes the respect due the court's judgments, upon

---

**1.** The Sixth Circuit also has applied the fugitive disentitlement doctrine in the immigration context but not yet in a published decision. *See Qui Jin Chen v. Gonzales,* 187 Fed. Appx. 502, 504 (6th Cir.2006) (unpublished); *Kacaj v. Gonzales,* 163 Fed.Appx. 367, 368 (6th Cir.2006) (per curiam) (unpublished).

which the dignity of a court depends. *Id.* *Degen* therefore suggests that, when considering whether to disentitle a criminal fugitive from appearing in a separate civil appeal, the most persuasive justifications to do so are (1) to promote the enforceability of decisions rendered by the appellate court and (2) to avoid prejudice to the other party resulting from the litigant's fugitive status. *SEC v. Berger*, 322 F.3d 187, 192 (2d Cir.2003).

While the punitive and deterrent purposes of disentitlement are discounted when a criminal fugitive seeks to appeal in a separate civil matter, they remain important considerations when a litigant becomes a fugitive to escape judgment in the very matter on appeal. *See Awadalla*, 357 F.3d at 246 (post-*Degen* decision considering each of the rationales underlying the fugitive disentitlement doctrine in dismissing the appeal of a criminal defendant who fled during the pendency of his appeal). Litigants who abscond in the midst of an ongoing appeal defy the authority of the very court from which they seek relief. *Id.* Disentitlement is an appropriate sanction for such litigants because their flight is "calculated to disrupt the very appellate process which they themselves have set in motion." *See Estelle*, 420 U.S. at 541–42, 95 S.Ct. 1173; *see also Ortega–Rodriguez*, 507 U.S. at 246, 113 S.Ct. 1199 ("We have no reason here to question the proposition that an appellate court may employ dismissal as a sanction when a defendant's flight operates as an affront to the dignity of the court's proceedings.").

Rather than being "an arbitrary response to the conduct it is supposed to redress or discourage," *Degen*, 517 U.S. at 828, 116 S.Ct. 1777, disentitling a fugitive from appealing a judgment that he has fled sends a clear message to similarly situated litigants—flee the effect of a judgment and the privilege of challenging that judgment vanishes with you. *See Ortega–Rodriguez*, 507 U.S. at 247, 113 S.Ct. 1199 (noting that "[o]nce jurisdiction has vested in the appellate court . . . dismissal may be an appropriate sanction by which to deter"). When an appellant or petitioner is a fugitive from the very judgment that is the subject of the appeal, we therefore consider all the rationales that underlie the fugitive disentitlement doctrine.

**B.  *Doctrine's Application to This Case***

Gao's continued failure to surrender to immigration officials renders him a fugitive from justice. It is therefore within our discretion under the fugitive disentitlement doctrine to dismiss his appeal.

■ Applying the fugitive disentitlement doctrine to dismiss Gao's appeal furthers each of the rationales underlying the doctrine. First, Gao's fugitive status means that there is no assurance that any decision or order we render against him will be enforced. The gravamen of his petition is the posture of "heads I win, tails you'll never find me." *Antonio–Martinez*, 317 F.3d at 1093. Second, Gao's failure to report for custody throughout the duration of this appeal undercuts the authority and dignity of the judicial process. Disentitlement is an appropriate sanction where, as here, the petitioner disdains the authority of the court in the very matter in which he seeks relief. *Awadalla*, 357 F.3d at 246. Third, dismissing Gao's appeal will promote the efficient operation of the courts by preserving judicial resources and deterring similarly situated petitioners from fleeing justice.

Fourth, and finally, there is no doubt that allowing Gao to proceed with this appeal despite his fugitive status will unduly prejudice the government. Petitioner asserts that his marriage and the birth of his two children in the United States constitute changed circumstances sufficient to

warrant reopening his motion for asylum and withholding of removal. While we do not reach the merits of this argument, we note that it rests largely on events of his own making that transpired while he was a fugitive. Allowing his motion to reopen to go forward would have the perverse effect of encouraging aliens to evade lawful deportation orders in the hope that, while they remain fugitives, they may contrive through their own efforts a new basis for challenging deportation. *See Wei Guang Wang v. BIA,* 437 F.3d 270, 274 (2d Cir. 2006) ("[I]t would be ironic, indeed, if petitioners ... who have remained in the United States illegally following an order of deportation, were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities.").

The fugitive disentitlement doctrine is discretionary. *See Esposito v. INS,* 987 F.2d 108, 110 (2d Cir.1993). However, there are no circumstances here militating against applying the doctrine of dismissal. Gao fails to offer any explanation whatsoever for his fugitive status. Thus, having been presented with no reason to overlook petitioner's fugitive status and reach the merits of his petition, we decline to do so. Instead, we dismiss petitioner's appeal. By dismissing his appeal asking us to review the Board's denial of his motion to reopen removal proceedings, we discourage petitioners from fleeing to evade the finality of a lawful deportation order and the removal to come.

## CONCLUSION

For the reasons stated above, Gao's petition for review is dismissed.