09-2564(ag)
Wu v. Holder

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

————————

August Term, 2009

(Argued: June 14, 2010                                    Decided: August 4, 2010)

Docket No. 09-2564(ag)

————————————————————————

NEN DI WU,

*Petitioner*,

— v. —

ERIC H. HOLDER, JR., ATTORNEY GENERAL

*Respondent*.

————————————————————————

Before: CALABRESI, POOLER, CHIN, *Circuit Judges*.

Petitioner Nen Di Wu petitions this Court for review of the Board of Immigration Appeals's June 1, 2009 order of removal. Before either party filed merits briefs, the Government moved to dismiss Wu's petition pursuant to the fugitive disentitlement doctrine. The issue before this Court is whether, in light of the considerations that inform this Court's discretionary power to dismiss pursuant to the fugitive disentitlement doctrine, such a motion is more appropriately considered after the parties have fully briefed and argued the merits of the case. We hold that it is and accordingly hold the motion in abeyance pending briefing and argument on the merits.

> Norman Kwai Wing Wong, New York, N.Y., *for Petitioner*.
>
> Andrew N. O'Malley, Trial Attorney, Office of Immigration Litigation (Tony West, Assistant Attorney General, Civil Division & Ernesto H. Molina, Jr., Assistant Director, Office of Immigration Litigation, *on the brief*),

U.S. Department of Justice, Civil Division, Washington, D.C., *for Respondent*.

_____

CALABRESI, *Circuit Judge*:

Petitioner Nen Di Wu moves for a stay of removal, and the Government moves to dismiss pursuant to the fugitive disentitlement doctrine. We grant Wu's stay of removal and hold the Government's motion in abeyance pending briefing and, if appropriate, argument on the merits.

## I.

Wu is a native and citizen of the People's Republic of China. Certified Administrative Record 50. In a June 2, 2006 hearing before an Immigration Judge (IJ), Wu conceded removability but sought asylum and withholding of removal based on religion and political opinion, as well as relief under the Convention Against Torture (CAT). *Id.* at 96. Wu testified before the IJ that he had attended an underground Christian church in China and, for that reason, was persecuted by the Chinese Government. *Id.* at 72-73. Specifically, he claimed that on two occasions he was arrested and detained by the Chinese police because of his involvement with the church. He testified that on the first occasion, he was interrogated about the underground church's members, punched and kicked, and detained for two weeks. *Id.* at 76-77. He said that on the second occasion he was detained for one week and sent to a labor camp for six months. *Id.* at 78-79.

The IJ rejected Wu's testimony as "vague," "evasive[,] and non-responsive," *id.* at 54, and found insufficient corroborating evidence that Wu has regularly attended church while in the United States, *id.* at 55-56. He accordingly denied Wu's asylum, withholding, and CAT claims.

-2-

*Id.* at 58. The Board of Immigration Appeals (BIA) dismissed Wu's appeal on June 1, 2009. *Id.* at 3-4.

On June 16, 2009, Wu filed with this Court a petition for review of the BIA's decision, as well as a motion requesting a stay of removal pending the adjudication of his petition for review. The Government opposed the motion for a stay of removal. On September 16, 2009, in response to the Government's opposition to the motion for a stay of removal, this Court issued an order asking the Government to file a supplemental letter memorandum explaining

> whether the petitioner will in fact be removed from this country, and if so when that will occur, if the petitioner's motion for a stay is denied as prayed for in Respondent's opposition. In addition, if removal of the petitioner will not be effected forthwith, or within a reasonable time following a denial of the motion for a stay, or following the lifting of the stay if one is entered, then Respondent shall explain in detail why it is that Respondent has filed an opposition to the petitioner's motion for a stay rather than agree to the entry of an order that will have no effect, as a practical matter, on whether the petitioner is actually removed from this country.

This Court also issued a temporary stay of removal, pending the receipt of the requested briefs and the disposition of the motion for a stay of removal.

The Government responded to the order in two ways. First, on September 28, 2009, it sent a "bag-and-baggage" letter to Wu, which directed him to report to a United States Immigration Officer with his bags, ready for deportation, on October 13, 2009. *See* Resp't's Mot. to Dismiss Exs. A & B. Second, on October 28, 2009, it filed a supplemental letter memorandum explaining its policy of selectively opposing those motions for a stay of removal that it finds to be perfunctory or facially inadequate. The supplemental letter memorandum also noted that the Government had already begun the process of removing Wu, through the issuance of the bag-and-baggage letter.

-3-

One day after filing its supplemental letter memorandum, the Government moved to dismiss Wu's petition pursuant to the fugitive disentitlement doctrine on the basis that Wu became a fugitive when he did not report as directed in the September 28 bag-and-baggage letter. Wu opposed the motion on three grounds: (1) the Government could not have removed Wu on or shortly after the issuance of the bag-and-baggage letter because this Court had put in place a temporary stay of removal, (2) the bag-and-baggage letter was issued only a month before the motion to dismiss, and so this was not the traditional fugitive disentitlement case in which the petitioner "had evaded the final removal order for several years and then filed appeal or motion to reopen," and (3) because of Wu's likely success on the merits, "justice is better served if further briefing of the issues upon the availability of the full administrative record is allowed." Pet'r's Opp'n to Mot. to Dismiss 1-2.

## II.

It is a matter of first impression in this Circuit whether, or under what circumstances, a case should be dismissed pursuant to the fugitive disentitlement doctrine before the merits of the case are fully before the court. Answering this question requires some discussion of the considerations that inform a court's discretionary power to dismiss a case on the ground of fugitive disentitlement.

### A.

The "fugitive disentitlement doctrine" is the name given to the inherent power of the federal courts to dismiss an appeal if the party seeking relief is a fugitive from justice while the appeal is pending. *See Degen v. United States*, 517 U.S. 820, 822-24 (1996). The "'paradigmatic object of the doctrine is the convicted criminal who flees while his appeal is pending.'" *Gao v. Gonzales*, 481 F.3d 173, 175-76 (2d Cir. 2007) (quoting *Antonio-Martinez v.*

-4-

*INS*, 317 F.3d 1089, 1092 (9th Cir. 2003)); *accord Smith v. United States*, 94 U.S. 97 (1876). But "we have also long held that the doctrine applies with full force to an alien who fails to comply with a notice to surrender for deportation." *Gao*, 481 F.3d at 176 (citing *Bar-Levy v. U.S. Dep't of Justice, INS*, 990 F.2d 33, 35 (2d Cir. 1993)).

A court has broad discretion to grant or deny a motion to dismiss on fugitive disentitlement grounds. *See Hanson v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006) (stating that "[f]ugitive disentitlement is an 'equitable doctrine' that may be applied at court discretion," and finding that "the justifications for disentitlement militate against dismissing this appeal"); *Esposito v. INS*, 987 F.2d 108, 110 (2d Cir. 1993) ("[The fugitive disentitlement doctrine] is invoked at our discretion, and we do not find sufficient reason to apply it in the present case." (citation omitted)). At a minimum, a court must find that a party either is currently a fugitive from justice or was a fugitive from justice and that a nexus exists between the party's former fugitive status and the appeal. *See Hanson*, 442 F.3d at 795 (quoting *Ortega-Rodriguez v. United States,* 507 U.S. 234, 249 (1993)). In the immigration context, we have, however, said that "for an alien to become a fugitive, it is not necessary that anything happen other than a bag-and-baggage letter be issued and the alien not comply with that letter." *Gao*, 481 F.3d at 176.

Still, once a court has determined that a party is a fugitive from justice, the decision on whether to dismiss the appeal should be informed by the reasons for the doctrine and the equities of the case. *See id.* at 176-78 (finding that the justifications for the doctrine support dismissal and that "there are no circumstances here militating against applying the doctrine of dismissal"). We have justified the fugitive disentitlement doctrine on four grounds:

> (1) assuring the enforceability of any decision that may be rendered against the fugitive; (2) imposing a penalty for flouting the judicial process; (3) discouraging flights from justice and promoting the efficient operation of the courts; and (4) avoiding prejudice to the other side caused by the defendant's escape.

*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997); *see also Degen*, 517 U.S. at 824. Although the Supreme Court in *Degen v. United States* "indicated that the dignity and deterrence grounds for disentitling fugitives do not support dismissal of a *civil* appeal based on an appellant's fugitive status in a separate criminal case," *United States v. Awadalla*, 357 F.3d 243, 246 (2d Cir. 2004), this Court in *Gao* (an immigration case and hence a civil appeal) stated that the dignity and deterrence grounds "remain important considerations when a litigant becomes a fugitive to escape judgment in the very matter on appeal," 481 F.3d at 177.

In addition to the traditional justifications for the doctrine, this Court has looked to the equities of a case in deciding whether to dismiss an appeal pursuant to the fugitive disentitlement doctrine. For example, we have found relevant whether a party provides an explanation for his fugitive status. *See Gao*, 481 F.3d at 178 ("Gao fails to offer any explanation whatsoever for his fugitive status."); *Esposito*, 987 F.2d at 110 ("While it is true that Esposito did not comply with a notice of surrender for his deportation on September 15, 1988, Esposito claims to have believed that his attorney was contesting this order and the underlying BIA decision in federal court.").

We have also looked at the extent to which a party has truly evaded the law. *Compare id.* ("Esposito has not escaped from custody, the INS never requested a bench warrant for his arrest, and Esposito never concealed his whereabouts from the INS."), *with Empire Blue Cross & Blue Shield*, 111 F.3d at 281-82 ("Finkelstein and Greenbaum failed to show up for their properly-noticed depositions and failed to comply with a court order to appear before the district court. Efforts failed to contact or locate the defendants at the addresses and phone numbers supplied by their own counsel. Finally, after four futile visits by a process server, the district court issued bench warrants for the arrest of Finkelstein and Greenbaum."); *see also Sun v. Mukasey*, 555

F.3d 802, 805 (9th Cir. 2009) ("Although Sun did not report for removal from the United States in August of 2004, as ordered by the BIA, that failure does not make her a fugitive now, during the pendency of her petition to review the BIA's denial of reopening. Sun's whereabouts are known to her counsel, DHS, and this court.").

Finally, at least one non-precedential decision of this Court has found relevant the merits of the appeal. *See Wang v. Holder*, 365 F. App'x 239, 240-41 (2d Cir. 2010) ("Noting the paucity of petitioner's arguments on the merits . . . we now dismiss the petition on fugitive disentitlement grounds.")

## B.

With these considerations in mind, we conclude that we cannot adequately consider the motion to dismiss on the present record. It is uncontested that Wu did not respond to the September 28 bag-and-baggage letter. For the purposes of the fugitive disentitlement doctrine, this act seemingly rendered Wu a fugitive from justice, at least in a technical sense.[1] *See Gao*, 481 F.3d at 176. But we are unable, at this time, to determine whether the justifications for the doctrine support dismissal of Wu's case. It is at least conceivable—although we are by no means convinced on the record before us—that the sanction and deterrence rationales would apply to this case in the same way as they applied to *Gao*. *See id.* at 177 (reasoning that "[d]isentitlement is an appropriate sanction where, as here, the petitioner disdains the authority of the court in the very matter in which he seeks relief" and that "dismissing Gao's appeal will

---

[1] It is not clear at what point under these circumstances one ceases to be a fugitive from justice. In *Gao*, we noted that an alien can *become* a fugitive from justice by not responding to a bag-and-baggage letter, notwithstanding the fact that his home address and place of employment are known to the authorities. 481 F.3d at 176 (citing *Ofosu v. McElroy*, 98 F.3d 694, 700 (2d Cir. 1996)). *But see Sun*, 555 F.3d at 804 ("No court has ever applied the doctrine to an alien whose whereabouts are known and who has not fled from custody."). And some affirmative act short of presenting oneself at the DHS's doorstep might well be sufficient to terminate an alien's fugitive status. But because Wu does not contest his fugitive status, we need not address this issue today.

-7-

promote the efficient operation of the courts by preserving judicial resources and deterring similarly situated petitioners from fleeing justice").

Whether a judgment of this Court would be difficult to enforce against Wu, however, depends in part on the extent to which Wu is actually evading the law. "Fugitives" come in different shapes and sizes. An alien fugitive whose whereabouts are known to the authorities is not evading the law in same way as is a "criminal defendant reposing in Switzerland, beyond the reach of our criminal courts," *Degen*, 517 U.S. at 828. *See Esposito*, 987 F.2d at 110. Obviously, a judgment of this Court would more likely be enforceable against the former class of fugitives than against the latter. *Cf. Degen*, 517 U.S. at 824 ("[S]o long as the party cannot be found, the judgment on review may be impossible to enforce."). Moreover, a court might find that one variety of fugitive is less deserving of sanction than another. *Cf. Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003) (finding that the sanction rationale favored dismissal because "[t]hose who disregard their legal and common-sense obligation to stay in touch while their lawyers appeal an outstanding deportation order should be sanctioned").

The record is mostly silent on the extent to which Wu is evading the law. The Government has discussed neither its initial or ongoing efforts to locate Wu nor any actions on Wu's part (other than his initial failure to respond to the bag-and-baggage letter) to flee the authorities.[2] The record does indicate, however, that Wu has not been "evading the law" very long if at all. The bag-and-baggage letter directed Wu to report for deportation on October 13, 2009, and the Government moved to dismiss Wu's appeal fifteen days later.

---

[2] It appears from the record that Wu was under the misimpression that the order to report to the DHS was in violation of this Court's temporary stay of removal. An alien has a legal obligation to respond to a bag-and-baggage letter even if a court has stayed the removal of the alien. *See Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003). We note that, Wu's legal obligation now having been clarified, the Government could simply send Wu a second order to appear. If Wu complied, the motion to dismiss might well be mooted.

-8-

It is also not clear on the record before us how Wu's fugitive status would prejudice the Government's case. The petitioner in *Gao* sought to reopen his case based on his marriage and the birth of his two children. *See* 481 F.3d at 177-78. In dismissing Gao's case, this Court reasoned that when the merits of one's appeal "rest[] largely on events of [one's] own making that transpired while [one] was a fugitive[,] . . . [a]llowing [the appeal] to go forward would have the perverse effect of encouraging aliens to evade lawful deportation orders in the hope that, while they remain fugitives, they may contrive through their own efforts a new basis for challenging deportation." *Id.* at 178. But because the merits of this case have not yet been briefed or argued, we do not know whether Wu has taken advantage of his fugitive status to "contrive . . . a new basis for challenging deportation," *id.* And the Government has provided no other putative reason explaining why allowing Wu's appeal to proceed would "unduly prejudice" it.

Lastly, to the extent this Court might find relevant the merits of Wu's underlying appeal, for their own sake, in deciding the equities—the justice or injustice—of applying the fugitive disentitlement doctrine, it, obviously, cannot adequately address the Government's motion without having those merits before it.

### C.

Because the merits of a case will frequently inform a court's discretion when addressing a motion to dismiss pursuant to the fugitive disentitlement doctrine, we hold that in immigration cases, motions to dismiss pursuant to the fugitive disentitlement doctrine are correctly addressed only after briefing—and, where appropriate, argument—on the merits of the appeal. *See Wang*, 365 F. App'x at 240-41. We accordingly hold the government's motion to dismiss pursuant to that doctrine in abeyance pending briefing—and, should it be granted, oral argument—on the

-9-

merits.  In their briefs on the merits, the parties should address any other factors that might be relevant to the motion to dismiss, including, but not limited to, the extent to which Wu is actually evading the law and what, if any, efforts the Government has taken to locate Wu.

In so holding, we are guided by the Supreme Court's admonition that "[t]he dignity of a court derives from the respect accorded its judgments.  That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." *Degen*, 517 U.S. at 828.  It is a "faulty premise that any act of judicial defiance, whether or not it affects the appellate process, is punishable by appellate dismissal." *Ortega-Rodriguez*, 507 U.S. at 250.

**III.**

**For the foregoing reasons, the motion to dismiss is held in abeyance by the current panel, which will retain jurisdiction and, in due course, receive briefs on the merits of the case.** The motion for a stay of removal is granted.