09-2564-ag
Wu v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Submitted:  June 22, 2011                    Decided:  July 19, 2011)

Docket No. 09-2564(ag)

_____

NEN DI WU,

*Petitioner*,

– v. –

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent.*

_____

Before: CALABRESI, POOLER, CHIN, *Circuit Judges*.

Petitioner Nen Di Wu petitions this court for review of the Board of Immigration Appeals's June 1, 2009, order of removal. Before either party filed merits briefs, the government moved to dismiss Wu's petition pursuant to the fugitive disentitlement doctrine. We held this motion in abeyance pending merits briefing. Having received the parties' merits briefs, we now conclude that the fugitive disentitlement doctrine does not require dismissal. Accordingly, we DENY the motion. The merits are considered in a summary order also filed today.

Norman Kwai Wing Wong, New York, N.Y., *for Petitioner*.

Andrew N. O'Malley, Trial Attorney, Office of Immigration Litigation (Tony West, Assistant Attorney General, Civil Division & Ernesto H. Molina, Jr., Assistant Director, Office of Immigration Litigation, *on the brief*), U.S. Department of Justice, Civil Division, Washington, D.C., *for Respondent*.

_____

CALABRESI, *Circuit Judge*:

Petitioner Nen Di Wu seeks review of Board of Immigration Appeals's (BIA) June 1, 2009, order of removal. The government moves to dismiss the petition pursuant to the fugitive disentitlement doctrine. We previously granted Wu's stay of removal and held the government's motion in abeyance pending briefing on the merits. Having received that briefing, we now find, in light of the rationales underlying the fugitive disentitlement doctrine, that its application is not warranted here. Accordingly, we deny the government's motion. In an accompanying summary order addressing the merits of Wu's case, we deny his petition for review.

## Background

The facts and procedural history of this case are recounted in our prior opinion, *Nen Di Wu v. Holder*, 617 F.3d 97, 98–99 (2d Cir. 2010); we recite here only those facts necessary to the resolution of this stage of the case. Wu is a native and citizen of the People's Republic of China. Certified Administrative Record 50. In a June 2, 2006, hearing before an Immigration Judge (IJ), Wu conceded removability but sought asylum and withholding of removal based on religion and political opinion, as well as relief under the Convention Against Torture (CAT). *Id.* at 96. Wu testified before the IJ that the Chinese government had persecuted him because he attended an underground Christian church in China. *Id.* at 72–73. Specifically, he claimed that on two

-2-

occasions he was arrested, detained, beaten, and sent to a labor camp by the Chinese police because of his involvement with the church. *Id.* at 76–79.

The IJ rejected Wu's testimony as "vague," "evasive[,] and non-responsive," *id.* at 54, and found insufficient corroborating evidence that Wu has regularly attended church while in the United States, *id.* at 55–57. Accordingly, the IJ denied Wu's asylum, withholding, and CAT claims. *Id.* at 58. The BIA dismissed Wu's appeal on June 1, 2009. *Id.* at 3–4.

On June 16, 2009, Wu filed with this court a petition for review of the BIA's decision, as well as a motion requesting a stay of removal pending the adjudication of that petition. The government opposed the motion for a stay of removal. While that motion was pending and despite this court's issuance of a temporary stay of removal, the Department of Homeland Security (DHS) issued Wu a "bag-and-baggage" letter, which directed him to report to a United States Immigration Officer on October 13, 2009, ready for deportation.[1] *See* Resp't's Mot. to Dismiss Exs. A & B. Wu failed to report as ordered.

The government, thereafter, moved to dismiss Wu's petition pursuant to the fugitive disentitlement doctrine. It argued that Wu became a fugitive on October 13 when he failed to comply with the bag-and-baggage letter. In an opinion issued August 4, 2010, we granted Wu's request for a stay of removal, held the government's motion to dismiss in abeyance, and ordered the parties to submit briefs on the merits. Having received this briefing, we are now prepared to turn to the government's dismissal motion.

Before we do so, however, one additional development bears noting. In our prior opinion, we suggested that DHS might reissue the bag-and-baggage letter and that, Wu's obligation to

_____

[1] As we noted in the prior opinion, a temporary stay of removal neither prevents the government from issuing a bag-and-baggage letter nor relieves an alien from complying therewith. *Wu*, 617 F.3d at 102 n.2. It does, however, prevent the government from actually deporting the alien-beneficiary of the stay.

respond having been clarified, he might comply, which could have mooted the government's motion to dismiss. *Wu*, 617 F.3d at 102 n.2. DHS followed this suggestion and, on August 24, 2010, sent Wu a new bag-and-baggage letter directing him to report to a deportation officer on September 27, 2010. Resp't's Br. Ex. D. Wu again failed to comply, and neither he nor his counsel contacted DHS to explain his non-compliance or to request a delay in light of the stay of removal.

**Discussion**

Under the "fugitive disentitlement doctrine," federal courts have the inherent power to dismiss an appeal of a party who, during the appeal's pendency, is a fugitive from justice.[2] *See Degen v. United States*, 517 U.S. 820, 822–24 (1996). Though the "'paradigmatic object of the doctrine is the convicted criminal who flees while his appeal is pending,'" *Gao v. Gonzales*, 481 F.3d 173, 175–76 (2d Cir. 2007) (quoting *Antonio-Martinez v. INS*, 317 F.3d 1089, 1092 (9th Cir. 2003)), "the doctrine applies with full force to an alien who fails to comply with a notice to surrender for deportation," *id.* at 176 (citing *Bar-Levy v. U.S. Dep't of Justice, INS*, 990 F.2d 33, 35 (2d Cir. 1993)). Wu does not dispute that his failure to comply with the bag-and-baggage letter technically renders him a fugitive for the purposes of this rule.

The government contends that this case is, therefore, controlled by *Gao* and that we must dismiss the petition. *Gao* involved a petitioner who failed to report as ordered in a bag-and-baggage letter and thereafter avoided contact with the government for seven years, during which time he married and had two U.S.-citizen children. He then moved to reopen his order of removal on the

_____

[2] The doctrine is also available to trial courts in the appropriate circumstances. *See generally In re Grand Jury Subpoenas dated March 9, 2001*, 179 F. Supp. 2d 270, 286 (S.D.N.Y. 2001); *see also, e.g.*, United States v. $129,374 in U.S. Currency, 769 F.2d 583, 587–88 (9th Cir. 1985) (civil forfeiture proceeding).

basis of his changed circumstances. The BIA denied his motion; he filed a petition for review in our court; and we dismissed the petition on fugitive disentitlement grounds.

The court in *Gao*, after finding that the doctrine could be used in immigration cases, acknowledged that its applicability was a matter of judicial discretion. *See* 481 F.3d at 175 (noting that courts "may" dismiss appeals under the doctrine and have "the authority" to do so, and contrasting, in this respect, this federal common law doctrine with a counterpart that in some states is statutory and mandatory); *see also Hanson v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006) ("Fugitive disentitlement is an 'equitable doctrine' that may be applied at court discretion."); *Esposito v. INS*, 987 F.2d 108, 110 (2d Cir. 1993) ("[The fugitive disentitlement doctrine] is invoked at our discretion, and we do not find sufficient reason to apply it in the present case." (citation omitted)). The issue before us thus becomes: how we should exercise our discretion in the instant case.

In our prior opinion in this case, we noted that "once a court has determined that a party is a fugitive from justice, the decision on whether to dismiss the appeal should be informed by the reasons for the doctrine and the equities of the case." *Wu*, 617 F.3d at 100. We earlier identified four bases for the rule:

> 1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape.

*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997); *see also Degen*, 517 U.S. at 824. We have also considered whether the party "provides an explanation for his fugitive status," "the extent to which a party has truly evaded the law," and the merits of the appeal. *Wu*, 617 F.3d at 101.

Applying these factors to Wu's case, we turn first to whether a decision adverse to Wu will be difficult to enforce against him. As we said before, this "depends in part on the extent to which Wu is actually evading the law," including how long he has been a fugitive. *Id.* at 102. Accordingly, we directed the parties to "address . . . the extent to which Wu is actually evading the law and what, if any, efforts the Government has taken to locate Wu." *Id.* at 103.

In its brief, the government has discussed neither its initial or ongoing efforts to locate Wu nor any actions on Wu's part (other than his failure to respond to the bag-and-baggage letters) that suggest that he is hiding from the authorities. To the contrary, the record shows that the authorities are well aware of how to locate Wu and that he remains within the court's jurisdiction. *See* Resp't's Br. Ex. E; *cf. Degen*, 517 U.S. at 828 ("acknowledg[ing] disquiet" at a defendant "reposing in Switzerland, beyond the reach of our criminal courts" while attempting to participate in a civil proceeding, but refusing to disentitle his participation in the civil case even then).

As to the length of time Wu has been a fugitive, when last we heard from the government, 14 months had passed from Wu's initial, October 2009, reporting date—a far cry from the seven years that elapsed in *Gao*. 481 F.3d at 175. During that time, Wu has shown no indication that he is likely to flee should his petition be denied. Indeed, he has not even changed his residence, *compare* Resp't's Br. Ex. C, *with id.* Ex. E., let alone failed to remain in contact with his counsel and DHS, *cf. Antonio-Martinez*, 317 F.3d at 1093 (approving disentitlement where an alien "disregard[ed his] legal and common-sense obligation to stay in touch while [his] lawyers appeal an outstanding deportation order").

We next ask whether the desire to sanction Wu for his failure to report as ordered justifies dismissing the petition. In *Gao*, the court said that "[d]isentitlement is an appropriate sanction

where, as here, the petitioner disdains the authority of the court in the very matter in which he seeks relief." 481 F.3d at 177. Like *Gao*, this case involves a petitioner whose fugitive status arises from the case at bar. But, unlike the *Gao* court, we see no "disdain" for our authority in Wu's actions. Indeed, the only court orders pertaining to Wu's deportation at the time DHS issued the bag-and-baggage letters were two stays of removal preventing DHS from deporting Wu pending, in the first instance, receipt of the government's response to the court's September 17, 2009 order and, in the second, resolution of Wu's merits petition. Moreover, Wu surely must have found the bag-and-baggage letters confusing, as the letters ordered him to appear for deportation when, as he knew, the court had temporarily enjoined DHS from deporting him. All these facts stand in sharp contrast to cases in which the sanctioned party has (a) defied a court order to surrender to custody, *United States v. Awadalla*, 357 F.3d 243, 245 (2d Cir. 2004), (b) failed to appear at a court proceeding, *see Ofosu v. McElroy*, 98 F.3d 694, 698–99 (2d Cir. 1996), *Ortega-Rodriguez v. United States*, 507 U.S. 234, 237 (1993), or (c) caused his whereabouts to become unknown, *Gao*, 481 F.3d at 175, *Antonio-Martinez*, 317 F.3d at 1091, *Arana v. U.S. INS*, 673 F.2d 75, 76–77 (3d Cir. 1982) (per curiam).[3]

While we reiterate that Wu was under an obligation, at a minimum, to contact DHS—directly or through counsel—in response to the bag-and-baggage letters, we think that using the fugitive disentitlement doctrine as a sanction for his noncompliance in a case like this would conflate disobedience of an executive command with that of a court order. Doing that ultimately weakens rather than protects the court's unique dignity, which is, after all, the doctrine's focus.

---

[3] The Seventh Circuit has used the fugitive disentitlement doctrine in a case in which the aliens' whereabouts were known and they had evaded no court order. *Sapoundjiev v. Ashcroft*, 376 F. 3d 727 (7th Cir. 2004). But, it did so because it thought that any judgment would be too difficult to enforce rather than to sanction the aliens.

Third, we consider the need for general deterrence and preservation of judicial resources. *Gao* noted that "dismissing Gao's appeal will . . . deter[] similarly situated petitioners from fleeing justice." 481 F.3d at 177. Some deterrent effect exists, of course, in all cases, but Wu is not similarly situated to Gao, and we question whether a slight general deterrence effect can outweigh the countervailing harm to the judicial process, which seeks to resolve cases on the merits whenever possible. *See Degen*, 517 U.S. at 828.

We are not, of course, arguing with *Gao*'s application of the doctrine, but we doubt that expanding its use to simple immigration cases like this one would actually "promote the efficient operation of the courts by preserving judicial resources." *Gao*, 481 F.3d at 177. The non-argument calendar our court uses to adjudicate the vast majority of immigration petitions already represents a streamlined process that minimizes the expenditure of judicial resources. We think it unlikely that disposing of more of these cases via motions to dismiss would save any additional judicial resources. It is true that disposing of these cases through motions to dismiss might use fewer Department of Justice resources because preparing formulaic briefs on that single procedural point is likely to be easier than briefing the merits of each case. But even this benefit will be elusive in cases where we deny the motion and the government would, as a result, end up submitting two briefs rather than one. In any event, because resolution by our court of such motions requires a decision on whether or not to apply the doctrine in our discretion, broad reliance on the doctrine by the government would probably require a significantly greater use of our time and resources than occurs when we consider such cases on the merits.

Fourth, and most importantly, the government has presented no evidence indicating that Wu's fugitive status has prejudiced its case. It states only that it has "expended resources to litigate

Mr. Wu's petition." Resp't's Br. 49. It would, however, have needed to expend these same resources had Wu complied with the bag-and-baggage letters. Because a stay of removal prevented the government from deporting Wu prior to resolution of his petition, no expenditure of resources is attributable to Wu's fugitive status. That expenditure, therefore, fails to qualify as prejudice.

Moreover, as the government's arguments on the merits attest, its litigating position has in no way been harmed by Wu's fugitive status. In this respect, the case before us is totally different from *Gao*. In *Gao*, the petitioner premised his claim to relief entirely on events that occurred during the period of his fugitivity, thereby making the government rebut new facts in order to defeat his petition on the merits. *See* 481 F.3d at 177–78.

In considering the equities of this case, we do observe that, despite our request that he do so, *see Wu*, 617 F.3d at 103, Wu never provided an explanation of his fugitive status or of what he believes to be the extent of his evasion. Nevertheless, unlike *Gao*, this case presents no circumstances indicating that the petitioner sought to take unfair advantage of the courts. There, the court said that the petitioner's case "rest[ed] largely on events of his own making that transpired while he was a fugitive[, and a]llowing [the case] to go forward would have the perverse effect of encouraging aliens to evade lawful deportation orders in the hope that, while they remain fugitives, they may contrive through their own efforts a new basis for challenging deportation." 481 F.3d at 178. In contrast, during his time as a "fugitive," Wu has done nothing to alter the merits of his claim for relief.

Lastly, though, as explained in the accompanying summary order, the merits of Wu's petition are weak, that factor is not enough to overcome the factors discussed above.

The government presents *Gao* as the paradigmatic case for the fugitive disentitlement doctrine's application in the immigration context. With the enforcement of the doctrine in Gao's circumstances, we have no argument. In our experience, however, Gao's story represents an extreme situation and Wu's the more normal case. Where the law calls for the exercise of discretion, facts matter, and cases cannot be lumped together on account of formal similarities. The facts before us are very different from those in *Gao*. And on that basis, exercising our discretion, we deny the government's motion to dismiss this petition pursuant to the fugitive disentitlement doctrine. In so doing, we continue to stand with the Supreme Court in believing that "[t]he dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." *Degen*, 517 U.S. at 828; *see also Ortega-Rodriguez*, 507 U.S. at 250 (declaring "faulty [the] premise that any act of judicial defiance, whether or not it affects the appellate process, is punishable by appellate dismissal").

Having denied the government's motion to dismiss, we must address the merits of Wu's petition for review of the BIA's decision. We do so in an accompanying summary order.

**Conclusion**

For the foregoing reasons, we DENY the motion to dismiss.